### SCOTTISH UNION INSURANCE COMPANY v. TOMKIES & CO.

#### Decided February 14, 1902.

**1.—New Trial—Absence of Counsel Excused.**

Where a cause was tried in the absence of defendant and its attorneys, who resided in a distant county and had reasonable ground to believe that the case would not be reached so soon, a new trial should have been granted upon an application therefor made at the same term and in time to secure a trial at that term, and a showing that a meritorious defense existed.

**2.—Same—Meritorious Defense—Insurance Policy—Stipulation Avoiding.**

Where the action was on a fire insurance policy, a showing that the policy contained a stipulation that if the building or any part of it should fall, except as a result of the fire, the insurance should immediately cease, and that a part of the building did fall as the result of a storm, thereby avoiding the contract,— presented a meritorious defense.

Appeal from Harris. Tried below before Hon. Wm. H. Wilson.

*O. T. Holt* and *Crane & Greer,* for appellant.

*L. B. Moody,* for appelllees.

GARRETT, CHIEF JUSTICE.—The appellees brought this suit in the District Court of Harris County for the Fifty-fifth Judicial District against the appellant to recover upon two fire insurance policies. The petition was filed April 25, 1901, to the May term of the court. The appearance day was May 7, 1901. On May 4, 1901, the appellant answered by filing a general demurrer and general denial. On May 11, 1901, the case was tried in the absence of counsel for the appellant and judgment was rendered for the appellees. One of the policies covered a building used for a grist mill and gin and the other covered personal property contained therein. On May 23, 1901, the appellant filed a motion for a new trial, in which it sought to clear itself of negligence in failing to present its defense to the policies sued on and to show that it had a meritorious defense. The following facts were shown by the motion: Messrs. Crane & Greer, a firm of lawyers at Dallas, Texas, had been employed by the appellant to defend the suit and had filed the answer. Dallas is 260 miles from Houston. The docket of the court was large, and appellant's attorneys, basing their opinion upon information derived from members of the bar at Houston, advised the appellant that it would be practically impossible to procure a trial of the case during the first few weeks of the term, it being an appearance case on the nonjury docket. Nonjury cases were assigned to the first and eighth weeks of the term, the intervening six weeks being allowed for jury cases.

The attorneys based their opinion that the case would not be reached during the first few weeks of the term upon information obtained from the members of the bar at Houston and from personal knowledge in being counsel in a number of cases pending in one of the district courts of Harris County. On May 20, 1901, M. M. Crane, one of appellant's attorneys, communicated with the clerk of the court by telephone and inquired what the status of the case was and when trial might be had. The clerk told him that he believed it had been put on the jury docket, but promised to write more particularly, and on the following day, May 21, the attorneys received a letter from him in which they were informed that a judgment had been rendered against them. M. M. Crane immediately went to Houston and prepared the motion for a new trial. The motion further showed that the case was not reached in due order by calling cases consecutively on the docket as they appeared, and that if it had been thus called it would not have been reached on the day the judgment was taken, but that on appearance day at the request of appellees' counsel it was set down for trial on May 10, 1901; that appellant was not consulted as to the setting of the case and did not consent thereto, either by itself or through its attorneys, and had no notice that

judgment had been rendered against it until ten days after it had been rendered.

As a defense to the appellees' cause of action the appellant set up that the policies sued on contained the provision: "If the building or any part thereof fall, except as the result of fire, all insurance on such building or its contents shall immediately cease;" and that a part of the building mentioned in the policies did, on or about September 8, 1900, fall as the result of a storm and not as the result of a fire; wherefore by its own terms the policy had been avoided, and there was no valid contract upon which judgment could lawfully be entered on May 10, 1901. The appellant submitted an aménded original answer in connection with its motion setting up the defense stated, and as a condition to the granting of the motion offered and agreed that the case might be set down for a trial at that term of the court for such time as might be convenient to the court, and to immediately prepare for trial. The motion was supported by affidavits. Appellees filed counter affidavits to the effect that the case was called and tried in its regular order and that no part of the building had fallen.

It appeared that the case was called in its regular order on the appearance docket, and that when it was reached counsel for appellees arose and asked the attorneys present if any of them represented the defendant, or its attorneys, but no one replied. Appellees' attorney then requested the court to set said cause for trial at the conclusion of the call of the docket, and at the conclusion of the call of the docket, and after all of the other cases upon the docket had been called and disposed of, the case was again called, and the court, by an order entered, set said cause for trial for Friday, the 10th of May, 1901. Said cause was called for trial in the afternoon of Friday, May 10, 1901, after all the cases in said court having precedence on the docket had been tried, postponed, or set for a later date, and when said cause was called, evidence was heard by the court and a trial had upon the merits, resulting in a judgment in favor of appellees. Appellant's attorneys, whose names were signed to its answer, were strangers to appellees' counsel, nor did he know where they resided, and he had never received any communication from them, any inquiry or request concerning said cause, until twelve days after the rendition of the judgment therein, at which time one of appellant's attorneys called upon him, and a conversation was had concerning the judgment which had been rendered. Appellant, by its agents, Weems & Bering, resided in Houston, Harris County, Texas, and had an office and agents at said place.

Counsel for the appellant could very reasonably have concluded that the case would not be reached for trial for some weeks, but being nonresident attorneys and not in daily attendance on the court, diligence would have required them to make some arrangement by which they would be advised of the particular status of the case on the docket and of the time it would be called for trial. Yet taking into consideration the actual crowded condition of the docket and their information and

knowledge as to the prospect of the trial of contested cases, to the appearance term, it can not be said that they were without excuse for their failure to present the defense relied on by the appellant. The condition of the docket and the course of the business of the court was such as to cause them to believe that the case would not be called for trial during the first few weeks of the term, and their excuse for failing to give earlier attention to the case was a reasonable one. It is clear that it was not the intention of the appellant to allow judgment to go against it by default. An answer had been filed, which although not presenting the defense relied on, was sufficient to make the case a contested appearance case upon the nonjury docket; and while at the request of appellees' counsel it was set down for trial by an order of the court, yet it was set down for a day earlier than the attorneys for appellant were reasonably warranted to expect that it would be set down. So the showing of appellant for a new trial presents some excuse for not making its defense and in allowing judgment to go against it on an ex parte trial. It also offered to submit to conditions to be imposed by the court and to try the case at that term at such time as might be designated by the court, and tendered an answer which it offered to file. This was done in ample time for a trial to be had at the appearance term. Upon such showing, where it is also made to appear that the party has a meritorious defense, the courts have always been liberal in granting a new trial, and although such motions are usually addressed to the sound discretion of the court the appellate courts have often reversed the judgment of the trial court denying them. Dowell v. Winters, 20 Texas, 796; Pullman Co. v. Dargan, 1 Will., 442; Sedberry v. Jones, 42 Texas, 10; Janes v. Langham, 33 Texas, 607; Thomas v. Womack, 13 Texas, 585; Broas v. Mersereau, 18 Wend., 653; Davenport v. Ferris, 6 Johns., 131; Talmage v. Stockholm, 14 Johns., 343; Anderson v. Scotland, 17 Fed. Rep., 667; Frazier v. Williams, 18 Ind., 416; Hindman v. Hamilton Paper Co., 53 Wis., 169; Bank v. Harwick, 74 Iowa, 227; Ordway v. Suchard, 31 Iowa, 481; Dodge v. Ridenour, 62 Cal., 263.

The general rule established by these authorities is that the application should be granted if made during the term early enough to secure a trial that term, if the defendant swears to a defense on the merits. Such was the rule in New York when the case of Dowell v. Winters, supra, was decided by our Supreme Court. In Dowell v. Winters the Supreme Court said: "The application addressed itself to the sound discretion of the court to be determined by considerations of convenience and equity. And under the practice of other courts the application it seems, would have prevailed, upon such terms, however, as to costs, as the court deemed equitable. 6 Johns., 131; 14 Johns., 343. The practice of other courts, however, is not obligatory; but the practice in our own courts ought to be referable to some general principle to produce uniformity, and this renders it proper that we should revise the judgment, although upon a question resting in some degree in the discretion of the court. It is obvious that such applications ought not to prevail

where the effect would be to delay the trial, unless upon a good excuse for the default, and the presentation of a meritorious defense. Nor in any case where it would be to let in an unconscientious or merely technical defense.

"In a late case at Austin we held that the court rightly refused to set aside a default where it would be to let in the defense of the statute of limitations. Foster v. Martin, 20 Texas, 118. But where the trial has not been delayed, and there is an affidavit of merits, we think the default should be set aside and the answer received, upon some showing by way of excuse for the failure to plead in time. The excuse proffered in this case was certainly very slight, but it appears that the counsel acted under a mistake of law. Both counsel and client appear finally to have done their very best to make amends. They present what seems to be a strong case of merits, and there is reason to apprehend that if not allowed to make defense, irreparable injury may be the consequence. For, having no such excuse for having made his defense to the action as a court of equity would deem sufficient, the defendant may not have been entitled to an injunction to stay the execution upon the judgment until he shall have recovered on the cross-bill against the defendant in another suit. It does not appear that the trial would have been delayed. The plaintiff would not have been injured or hindered by reason of the default. On the whole we conclude that the court ought, under the circumstances, to have set aside the judgment by default upon the payment of costs, and that the court erred in refusing it. The judgment is therefore reversed and the cause remanded for further proceedings."

It thus appears that the Supreme Court undertook as early as 1858 to establish a uniform practice in the courts of this State referable to some general principle, which is that such applications should be determined by considerations of convenience and equity,—convenience if a trial can be held during the term, and equity if a meritorious defense is shown accompanied by some excuse for not presenting it; and the rule for such determination is stated to be that where the trial has not been delayed and there is an affidavit of merits, the default should be set aside and the answer received, upon some showing by way of excuse for failure to plead in time. The rule thus announced has not been modified by any of the subsequent cases. There may be expressions in some of the cases that would seem to do so, but an analysis of the facts will show that the application was made after the term, or that there were some other distinguishing circumstances.

The defense relied on to defeat a recovery upon the policy, if true, is meritorious and not technical, especially when it is considered that by statute in this State the full amount of the insurance named in the policy upon the building is collectible in case of destruction by fire, without regard to its actual value. There is an affidavit in support of the motion that the building did in part fall as the result of a storm and not as the result of a fire. Photographs accompanying the record

show that this may have been true.   There are counter affidavits deny-
ing that any part of the building had fallen, but the effect of all is that
there is a question for the jury to determine, whether or not any integral
or material part of the building fell.   Railway v. Burke, 55 Texas, 338.
The case of Insurance Company v. Crunk (Supreme Court, Tennessee),
23 Southwestern Reporter, 140, called to our attention by counsel for
the appellee, holds that the falling of a minute portion of the material
in the building would not avoid the policy, where no integral part of
the entire building fell.   But whether or not such integral part fell is
a question for the jury, and the affidavits before the court and the ac-
companying photographs showed that there would be sufficient evidence
to require the submission of such an issue.   We are therefore of the
opinion that there was an affidavit of merits.   The judgment of the
court below will be reversed and the cause remanded.

*Reversed and remanded.*