**GREEN et al. v. CAMMACK et al.**
**(No. 877.)**

(Court of Civil Appeals of Texas. Beaumont. Feb. 23, 1923. Rehearing Denied March 7, 1923.)

Judgment ⟺138(1)—Showing held to call for setting aside judgment on ex parte hearing.

Judgment against defendant on an ex parte hearing should be vacated and new trial granted; his application showing some excuse for his failure to be present at the trial, impossibility of arrival after notification, and a meritorious defense, and it not appearing that plaintiffs will thereby be materially prejudiced.

Appeal from District Court, Tyler County; D. F. Singleton, Judge.

Action by T. J. Cammack and others against C. M. Green and others. There was judgment for plaintiffs, and also judgment for defendant J. C. Shipp on his cross-action against certain defendants. Motion of defendants Green and J. E. Burton to vacate the judgment against them and for new trial was denied, and they appeal. Affirmed in part, and in part reversed and remanded for new trial.

V. E. Middlebrook, of Nacogdoches, and E. J. McLeroy, of Timpson, for appellants.

Russell & Seale, of Nacogdoches, and J. E. Wheat, Coleman & Lowe, J. A. Mooney, and R. A. Shivers, all of Woodville, for appellees.

HIGHTOWER, C. J. The appellees, T. J. Cammack, F. D. Price and J. W. Price, who were the plaintiffs below, filed this suit in the district court of Tyler county on June 15, 1920, naming as defendants J. C. Shipp, J. E. Burton, C. M. Green, Henry Walker, Tom Miller, and E. H. Houchins. Plaintiffs, for cause of action, alleged, substantially, that on May 7, 1920, they made a verbal agreement with defendant Shipp to sell and deliver to him in Tyler county, Tex., 67 cows and 17 yearlings and calves, making in all 84 head of cattle; that Shipp was to pay cash for the cattle, the aggregate amount agreed upon being $2,760; that when plaintiffs came to deliver the cattle to him, Shipp, instead of paying cash for the cattle, as agreed, tendered to plaintiffs his personal check on the First State Bank of Garrison, Tex., for the agreed purchase price of the cattle, and that Shipp, in order to induce plaintiffs to deliver to him the cattle, represented to them that he had sufficient funds in the bank to meet the check; that acting upon Shipp's statement to plaintiffs, they accepted the check, but for collection only, and at the same time delivered to Shipp the cattle; that the check was promptly sent to the bank for collection, but payment was refused because Shipp had no funds there; that in the meantime defendants Burton and Green had gotten possession of 41 head of the cattle, and defendants Walker, Miller, and Houchins had gotten possession of the remainder of the cattle; that Shipp knew at the time he gave the check to plaintiffs he had no funds in the bank to meet it, and that his representation to the contrary was fraudulently made to induce plaintiffs to deliver to him the cattle, and that they were so induced; that defendants Burton, Green, Walker, Miller, and Houchins, who got possession of the cattle from Shipp, knew at the time they did so that the cattle did not belong to Shipp, but that he had gotten possession of them by fraud, or that by proper diligence they would have known such facts; and that therefore said defendants acquired no property rights in the cattle and had no right to withhold their possession from plaintiffs.

The prayer was for title and possession of all the cattle from all the defendants.

Shortly after filing their petition, plaintiffs sued out several writs of sequestration, and these writs were, on July 21, 1920, levied upon a number of these cattle found in possession of the defendants other than Shipp.

All the above-named defendants were duly served with citation of plaintiffs' cause of action, and all answered, defendants Burton and Green interposing a plea of privilege, which was afterwards abandoned, and they then answered to the merits.

Shipp's original answer to plaintiffs' petition consisted of a general demurrer and general denial. In his amended answer he admitted the purchase of the cattle from plaintiffs, and admitted that he had not paid for them, and confessed judgment in favor of plaintiffs for the purchase price of the cattle as claimed by the plaintiffs.

By way of cross-action against Burton and Green, Shipp alleged, substantially, that soon after he purchased plaintiffs' cattle, he traded or exchanged them to Burton and Green for about 70 head of steers and a few head of yearlings; that Burton and Green represented to him that the steers and yearlings were sound and free from ticks, and that these representations induced him to make the trade with them; that at the time of this trade, Shipp had made a contract with

one J. H. Walker, by the terms of which Walker was to purchase these steers and yearlings from Shipp for the aggregate consideration of $3,026, provided these steers and yearlings were sound and free from ticks; that before the deal could be closed with Walker, these steers and yearlings commenced dying from tick fever, and that they all died except $625 worth of them, and thereby Shipp lost his contemplated deal with Walker, and that in consequence he sustained damages in the sum of $2,401, for which amount he prayed judgment against Burton and Green. Burton was never cited on Shipp's cross-action and never answered it. Green filed a plea of privilege as to the cross-action, and this was later overruled, and he answered to the merits.

On August 24, 1921, the plaintiffs, Cammack and others, filed their first amended original petition, in which they reiterated all the material allegations of their original petition, as against all the defendants. The amendment further showed that the several writs of sequestration sued out by them had been levied upon most of the cattle, which they had delivered to Shipp, and that such cattle had been replevied by the parties in whose possession they were found. Thirty-eight head of the cattle were levied upon in the possession of Burton and Green, and they, as principals, with Stroud Kelley, T. F. Cook, and J. E. Blankenship, as sureties, replevied these cattle; the bond therefor being in the sum of $4,000. It was further shown that some of the cattle were levied on in the possession of Henry Walker, and that these were replevied by Walker, as principal, and Burton and Green sureties on the replevy bond, which was in the sum of $450.

Trial of the cause was had on February 15, 1922, in the absence of Burton and Green, as well as in the absence of their only attorney in the case, and final judgment was rendered against them. We confess that we have had no little difficulty in trying to ascertain just what the judgment provided; but, construing it in the light of the record, we have reached the conclusion that the court rendered the following judgment:

The original plaintiffs, Cammack and others, were awarded judgment against Shipp for $2,438.01. The same plaintiffs were also awarded judgment against Burton and Green and the sureties on their replevy bond above mentioned, Kelley, Cook, and Blankenship, in the sum of $1,520, and they were also awarded judgment against Burton and Green as sureties on J. H. Walker's replevy bond above mentioned for $160.

On his cross-action against Burton and Green, Shipp was awarded judgment against them for $3,026, which was in excess of the amount sought to be recovered against them by more than $600; and Shipp was also awarded judgment in the same amount against Kelley, Cook, and Blankenship, as sureties on Burton and Green's replevy bond, with which Shipp was in no manner connected. The judgment further recites that the plaintiffs, Cammack and others, are entitled to a lien against all the cattle that they delivered to Shipp, and the lien was ordered foreclosed as against all defendants. Other provisions of the judgment affect parties who have not appealed.

On February 16, 1922, the next day after the judgment was rendered, the attorney for Burton and Green, Hon. V. E. Middlebrook, reached the courthouse at Woodville, and filed a motion praying the court to vacate the judgment in so far as his clients were affected by it, and requested the court to grant them a new trial of the case on its merits. In this motion a number of grounds were advanced, and among them the fact that the judgment was rendered in the absence of himself and clients, and that such absence was, under the circumstances excusable. The entire motion, considered in connection with the exhibits attached, is quite lengthy, and no useful purpose would be served by setting it out in full. Suffice it to say that the motion showed a meritorious defense on the part of Burton and Green to the cause of action asserted by the plaintiffs, Cammack and others, against them, and also a meritorious defense to the cross-action of Shipp.

The court heard the motion on the next day (February 17th) after it was filed, and overruled it, and from that action Burton and Green have prosecuted this appeal.

In his brief, counsel for appellants has advanced a number of reasons which it is claimed compel this court to reverse and render the judgment in favor of appellants. Such contentions have had our careful consideration, but we have reached the conclusion that they ought not to be sustained, and they are therefore overruled.

It is next insisted that the judgment itself is so vague, indefinite, and uncertain in its provisions that no execution could be properly issued upon it, and that therefore reversal, at least, should follow. The judgment is rather lengthy, too much so to be here shown in full, and, as we have stated, we have found no little difficulty in arriving at its full meaning. So far, however, as appellants are concerned, we think the judgment, when considered in the light of the record, is sufficiently definite and therefore overruled this contention.

It is next contended that the lower court was in error in not vacating the judgment as to appellants and in refusing to grant them a new trial upon the merits, for the reason that their motion therefor showed a meritorious defense to the cause of action asserted against them by the plaintiffs, as well as to that asserted by Shipp in his cross-action, and that their motion further showed facts that, if true, reasonably excused appel-

lants and their counsel for not being present at the trial. We have examined the record very carefully in connection with this contention, and have reached the conclusion that it must be sustained.

The facts shown by the motion to vacate the judgment, and upon which appellants relied as an excuse of their absence at the trial, stated substantially, are as follows:

Neither Burton nor Green resided in Tyler county, where the trial was had, but, on the contrary, both were nonresidents of that county, Burton being a resident of Harris county, and Green a resident of Shelby county; nor did their attorney, Hon. V. E. Middlebrook, reside in Tyler county, but was a resident of Nacogdoches county, some 76 miles distant from Woodville.

The case, for the several terms preceding the trial term, had been set for trial by agreement of counsel for all parties, and appellants and their attorney were present in court at such former terms; but the case was each time continued. It had been the custom for appellants' attorney to notify them of the setting of the case, and appellants were expecting to be notified by their attorney of the setting of the case at the term at which it was tried, or at least to be notified by him when it should be again set for trial.

It appears from the record that on February 6, 1922, the trial judge set this case for February 15th following; but at whose request, or how it came to be set, is not reflected by the record. Neither of the appellants nor their attorney knew of this setting.

On the morning of the 6th of February, appellants' attorney began the trial of a murder case in the district court of Cherokee county, which trial was not concluded until about midnight of February 11th. Appellants' attorney was at that time also representing a defendant in an extradition proceeding pending before the Governor of Texas at Austin, and on account of the attorney's engagement in the murder case in Cherokee county, the Governor had postponed the extradition proceeding at Austin, and had set it for February 14th, and had notified appellants' attorney to be at Austin on that date. When the case in Cherokee county was concluded, appellants' attorney left for Austin to be present at the extradition proceeding before the Governor.

On the morning of February 14th, appellants' attorney's stenographer, at his office in the town of Nacogdoches, Tex., received notice of the setting of this case at Woodville, in Tyler county, and she at once sent a telegraphic message to appellants' attorney at Austin, notifying him of the setting of this case. This message was received by appellants' attorney in the afternoon of the same day, but at that time there was no way for him to leave Austin for Woodville before 10:15 that night. Upon receipt of this message, appellants' attorney immediately sent a telegraphic message to the district judge at Woodville, stating, substantially, that appellants' attorney would not be able to reach Woodville on the morning of February 15th, and requesting that the case be either continued or postponed until appellants' attorney could arrive in Woodville, and requesting a reply from the trial judge. At the same time, appellants' attorney also sent telegraphic messages to both Burton and Green, notifying them of the setting of the case at Woodville, and telling them to meet him at Woodville on the 15th with their witnesses. Green got his message about 8 o'clock a. m., February 15th, and he at once tried to get in communication with Burton by telephone, but failed in that, and he then started for Woodville, but got there after the judgment had been rendered.

Appellants' attorney left Austin on the first train for Woodville, after receiving the message from his stenographer, going by way of Houston and thence to Beaumont, and he arrived at Beaumont at 9:15 o'clock on the morning of February 15th, which was the very first train on which he could have reached Beaumont after receiving the message from his stenographer. At that time the only train from Beaumont to Woodville had gone—left at 7 o'clock a. m. Beaumont is about 60 miles from Woodville, and when appellants' attorney reached Beaumont, he at once tried to get in communication with the trial judge at Woodville, by phone, but was finally told by the operator that the trial judge could not talk to him before noon of that day. Appellants' attorney then tried to get conveyance to Woodville by automobile, but was informed that the condition of the road was such at that time of the year that he could not use an automobile. At noon appellants' attorney got in communication with the district judge, and was then told that the case had been heard and that judgment had been rendered against his clients. Thereafter, appellants' attorney left Beaumont on the first train for Woodville, and filed the motion to vacate and for new trial, as shown above.

So far as we can tell from the very confusing record in this case, there was no denial by appellees of any statement of fact contained in appellants' motion, and we, therefore assume that all such statements are true. In this connection, we make this further statement: It does not appear from anything in the record that appellees would have been seriously inconvenienced or materially delayed in the trial of the case had the court granted the motion to vacate. On the other hand, it does appear that if the judgment should be permitted to stand, appellants might suffer irreparable injury.

Now, what is the rule in this state governing an application to vacate a judgment and grant a new trial where the judgment against

the defendant was rendered upon an ex parte hearing? . It seems that the rule, as announced by practically an unbroken line of decisions, is that if the application shows some excuse for the defendants' failure to be present at the trial, and further shows a meritorious defense to the plaintiffs' cause of action, it should be granted, unless to do so would materially prejudice the plaintiffs' rights in some way. The appellate courts have been very liberal in applying this rule, and have often reversed trial courts for ignoring it. Dowell v. Winters, 20 Tex. 797; Scottish, etc., Insurance Co. v. Tomkies, 28 Tex. Civ. App. 157, 66 S. W. 1109; Sevier v. Turner (Tex. Civ. App.) 33 S. W. 294; Springer v. Gillespie (Tex. Civ. App.) 56 S. W. 369; Sedberry v. Jones, 42 Tex. 10; Robinson v. Collier, 53 Tex. Civ. App. 285, 115 S. W. 915; Pecos, etc., Railway Co. v. Faulkner (Tex Civ. App.) 118 S. W. 747; Dancy & Co. v. Rosenberg (Tex. Civ. App.) 174 S. W. 831.

In Scottish, etc., Insurance Co. v. Tomkies, supra, the court, after quoting at length from the opinion of Judge Wheeler in Dowell v. Winters, concludes as follows:

"It thus appears that the Supreme Court undertook as early as 1858 to establish a uniform practice in the courts of this state, referable to some general principle, which is that such applications should be determined by considerations of convenience and equity—convenience if a trial can be held during the term, and equity if a meritorious defense is shown, accompanied by some excuse for not presenting it; and, the rule for such determination is stated to be that where the trial has not been delayed, and there is an affidavit of merits, the default should be set aside and the answer received, upon some showing by way of excuse for failure to plead in time. The rule thus announced has not been modified by any of the subsequent cases. There may be expressions in some of the cases that would seem to do so, but an analysis of the facts will show that the application was made after the term, or that there were some other distinguishing circumstances."

So, in this case, we think it is clear from the statement we have made above that at least some excuse was shown for appellants and their counsel not being present at the trial of this case, and as their motion to vacate showed a meritorious defense to the causes of action asserted against them, both by the original plaintiffs and the cross-action of Shipp, and since, as we have shown, there is nothing in this record that indicates that the appellees would be seriously inconvenienced or that the trial would be materially delayed had the judgment been vacated, the trial court, under the rule announced by all of the above-cited authorities and many others as well, erred in refusing to sustain the motion and vacate the judgment. For that error, the judgment must be reversed in so far as it in any manner affects the appellants Burton and Green and sureties on their replevy bond. The judgment in favor of the original plaintiffs, Cammack and others, against the defendant Shipp, will be in all things affirmed; and the judgment as between said plaintiffs and all parties, other than Burton and Green, and said sureties, will be also affirmed; and the cause will be remanded for trial as between the original plaintiffs and Burton and Green, and also between Shipp on his cross-action and Burton and Green. It has been so ordered.