## PAGGI et al. v. ROSE MFG. CO. et al. *
### (No. 8962.)

(Court of Civil Appeals of Texas. Dallas. Feb. 16, 1924. Rehearing Denied March 15, 1924.)

**1. Pleading ⌖⇒214(1)—General "demurrer" admits truth, but denies that facts constitute cause of action or defense.**

The legal effect of a general demurrer is to admit the facts pleaded to be true, but to deny that they constitute a cause of action or ground of defense.

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Demurrer.]

**2. Pleading ⌖⇒214(1)—General demurrer admits reasonable deductions and inferences and allegations on information and belief.**

A general demurrer admits all reasonable deductions or inferences from the facts alleged and all allegations of fact based on information and belief.

**3. Bankruptcy ⌖⇒387—Confirmation of composition discharged bankrupt from debt.**

Confirmation by the court of a composition offered by bankrupt to his creditors discharged him from an existing debt and was a meritorious defense to suit by creditor.

**4. Bankruptcy ⌖⇒391(3)—Bankrupt entitled to restrain execution of judgment obtained before confirmation of composition.**

Where composition offered by a bankrupt to his creditors was confirmed by court, bankrupt was entitled to a perpetual injunction against a creditor restraining execution of a judgment on notes obtained after adjudication and before confirmation of the composition.

**5. Partnership ⌖⇒44, 213(2)—Sworn denial of partnership meritorious defense, and casts burden of proof on plaintiffs.**

In an action on notes and open account in which defendant was brought in under an allegation that he was a partner with another, defendant's denial of the partnership and the execution of the notes under oath set up a valid defense, and cast burden of proof of such issue on plaintiffs.

**6. Judgment ⌖⇒143(3)—Defendant's failure to be present at trial held excusable.**

Where defendant was sued with another under an allegation that he was a partner, and his attorney sought information from the clerk as to the setting of the case, such information having been so furnished him as to other cases, and defendant's alleged partner had filed petition in bankruptcy and offered composition settlement which was confirmed, and the pending action was by one of the creditors whose claim was involved in the composition, failure to be present when case was tried and default entered *held* excusable.

**7. Judgment ⌖⇒126(1)—Absence of defendant held not to relieve plaintiff of proof of defendant's liability by competent evidence.**

In action against defendant under allegation that he was partner with another it is not to be presumed that default judgment would have been rendered against defendant on incompetent evidence if defendant's sworn denial of partnership had been brought to the court's attention and absence of defendant did not relieve plaintiff from the burden of proving by competent evidence the existence of the alleged partnership.

**8. Judgment ⌖⇒126(4)—Default judgment based on hearsay held defective.**

A default judgment based on hearsay, hence incompetent evidence, is defective, such evidence gaining no vitality because admitted without objection.

Vaughan, J., dissenting in part.

On Motion to Certify to Supreme Court.

**9. Courts ⌖⇒487(3)—Motion after rehearing to certify to Supreme Court refused.**

Where motion to certify to Supreme Court was filed six days after motion for rehearing was overruled, and to grant motion the order overruling motion for rehearing would have to be set aside, and no good reason for such action exists, the motion to certify will be refused.

Appeal from Dallas County Court; T. A. Work, Judge.

Action by Charles Paggi and another against the Rose Manufacturing Company and another. Judgment for defendants, and plaintiffs appeal. Reversed and remanded, with instructions.

Edwin M. Fulton, of Pilot Point, and J. L. Zumwalt, of Dallas, for appellants.

Leake & Henry, of Dallas, for appellees.

LOONEY, J. Charles Paggi, a resident of Jefferson county, Tex., and Theo Ledel, a resident of Denton county, Tex., on October 4, 1922, filed in the county court of Dallas county at law a petition against Rose Manufacturing Company, a corporation, and its attorneys, Leake & Henry, of Dallas county, a bill to review a judgment rendered against them in said court in favor of Rose Manufacturing Company, and for injunction to restrain the execution of the judgment. On hearing the court sustained a general demurrer to the petition and dismissed the case, from which order of dismissal Paggi and Ledel appealed and have assigned errors.

The material allegations of appellants are: That on January 25, 1922, Rose Manufacturing Company filed suit in the county court of Dallas county at law against Ledel Dry Goods Company on certain notes aggregating $686.80, and on an open account for $80, alleging that Ledel and Paggi were partners composing the firm of Ledel Dry Goods Company; that through their attorney, Edwin M. Fulton, the appellants, on March 2, 1922, filed separate answers in said suit; that Paggi in due order, as a part of his answer, denied under oath the alleged

partnership, denied specifically that he was ever at any time a partner with Ledel in the firm of Ledel Dry Goods Company; that he had no dealing with Rose Manufacturing Company; denied under oath the execution of the note sued upon, or that his name was signed to the notes, etc. They further allege that this case was tried on June 2, 1922, in the absence of appellants and their attorney; that neither knew the case had been set for trial, or that it would be tried at the time; that the first knowledge either had that the case had progressed to judgment against them was when the sheriff of Jefferson county, Tex., appeared before Charles Paggi with an execution issued on the judgment and demanded a levy; thereupon, this suit was immediately instituted to review and 'set aside the judgment, and for injunction restraining the execution of the same.

Appellants allege further that on May 20, 1922, Theo Ledel was on his petition adjudicated a bankrupt in the United States District Court for the Eastern District of Texas, at Sherman, and that Rose Manufacturing Company, appellee, was scheduled as one of his creditors; that in the petition filed in bankruptcy Ledel alleged that he was the sole owner of Ledel Dry Goods Company. Later, he offered in settlement to his unsecured creditors, including Rose Manufacturing Company, a composition of 21 per cent.; that notices were sent to each of his creditors in the bankrupt proceedings of the creditors' meetings and in regard to the composition offered; that the offer of composition was duly accepted by a majority in number and amount of his creditors at a meeting in Sherman, held for that purpose on June 14, 1922, and that the same was on June 23, 1922, confirmed by Hon. W. L. Estes, judge of said court, and the bankrupt proceedings dismissed. The proceedings, with reference to the composition, the confirmation thereof, and the dismissal of the proceedings, are shown by certified copy of the proceedings in bankruptcy attached to and forming a part of appellants' petition.

Appellants account for the absence of themselves and their attorney from court, when the case was tried, substantially as follows: That their attorney, Edwin M. Fulton, who resided at Pilot Point, Denton county, Tex., at the time the answers were filed with the clerk of the court on March 2, 1922, requested the clerk to notify him when the case was set; receiving no answer from the clerk, later, in the same month, he wrote the clerk again for information in regard to the setting of the case. Receiving no answer, in the early part of the month of May, 1922, he made a special trip to Dallas for the purpose of getting this information; but at this time the case had not been set, and the attorney received no information in regard to the setting. It was further alleged that their attorney, prior thereto, had cases in said court and the clerk had previously notified him of the setting of cases, and he presumed the clerk would in a like manner notify him as to the setting of this case, and relied upon him to do so; that the adjudication on May 20, 1922, of Theo Ledel, on his voluntary petition as the sole owner of Ledel Dry Goods Company, suspended said suit and any action against him by the state court, and that the composition offered by Ledel, and its acceptance by his creditors and confirmation by the court, discharged him from liability for the debts; that the verdict and judgment against Charles Paggi is false and fraudulent and procured through fraud, in that it is based upon an alleged default as to him and is a judgment by default; whereas his answer, including a sworn plea denying partnership and the execution of notes, had been on file among the papers in the case for two months, and "that the court and jury were led to believe that the said Paggi had not filed his answer in said case." Appellants further alleged, on information and belief, that the only evidence introduced by appellee to prove that he, Paggi, was a partner with Theo Ledel in said firm, were two mercantile reports, the same being hearsay, incompetent, and not binding upon appellant, and that they have good reason to believe that a different result will be reached by a new trial.

It was further shown that appellant Ledel has a meritorious defense, in that he was discharged from said debt in bankruptcy, and that Charles Paggi has a meritorious defense to said suit, in that he was never a partner with Ledel as alleged by Rose Manufacturing Company, never contracted any of the debts sued upon, or executed the notes.

Appellants' contentions on this appeal are, That the court below erred in sustaining the general demurrer to their petition and in dismissing their cause, and for this they show that their absence and the absence of their attorney from court on the day of trial was not due to the lack of diligence on their part, under all the facts and circumstances; that the judgment rendered against them was the result of fraud, in this that it was based, as to appellant Paggi, on a recital that he had made default and that the court and jury were led to believe that he had not filed an answer; that the sworn plea denying partnership cast the burden of proof upon appellee, and that the only proof offered by it on the issue of partnership was hearsay and incompetent; that they have meritorious defenses to the suit, and expect a different result if the case is retried.

Appellees answered this contention by urging the propositions that the relief prayed for will not be granted appellants (a) simply because the judgment against them was erroneous; (b) that the failure of appellants to make a valid defense to the suit was due to their own fault or negligence; and (c)

that the voluntary proceedings in bankruptcy by Theo Ledel did not, of itself, suspend or stay the suit in the state court.

These different contentions will be discussed.

[1] The question for our decision is whether or not appellants' petition or bill of review was sufficient as against a general demurrer. It was said in an early case in this state that—

"The legal effect of a general demurrer is to admit the facts pleaded to be true, but to deny that they constitute a cause of action or ground of defense. * * * And the only question which will be considered under it is, whether any cause of action or ground of defense is disclosed in the pleadings demurred to. * * * Consequently, if sufficient be stated to enable the court to see, that a good cause of action or ground of defense exists, however defectively stated, the insufficiency or defectiveness of the averments cannot be taken advantage of on general demurrer." Williams v. Warnell, 28 Tex. 612; Jefferson v. Scott (Tex. Civ. App.) 135 S. W. 706.

[2] A general demurrer also admits all reasonable deductions or inferences from the facts alleged and all allegations of fact based on information and belief.

Tested by these rules, was the petition for review good as against a general demurrer?

[3] That appellants had meritorious defenses to the suit is evident. The confirmation of the composition offered by Ledel to his creditors entered by the court on May 23, 1922, discharged him from the debt on which he was sued by Rose Manufacturing Company.

The law on this point is announced by Collier (12th Ed.) vol. 1, p. 314, as follows:

"The effect of the composition is to supersede the bankruptcy proceedings and reinvest the bankrupt with all his property free from the claims of creditors. It either extinguishes the legal liability or is a bar to the remedy, and, in either event, the bankrupt can · no longer be compelled to ·pay; * * * provable claims are discharged though the holder thereof did not actually prove the same or participate with the other creditors in taking action upon the composition."

[4] Ledel was entitled to a perpetual injunction against Rose Manufacturing Company restraining the execution of the judgment.

A case directly in point, decided by the Supreme Court of the United States under the Bankruptcy Act of 1867 (14 Stat. 517), is Boynton v. Ball, 121 U. S. 457–467, 7 Sup. Ct. 981, 984, 30 L. Ed. 985, 987. In that case the court said:

"If for any of these reasons, or for others, he permits the case to proceed to judgment in the state court, by failing to procure a stay of proceedings under the provisions of this section of the bankrupt law, or the assignee in bankruptcy does not intervene as he may do, * * * he does not thereby forfeit his right

to plead his final discharge in bankruptcy, if he shall obtain it, at any appropriate stage of the proceedings against him in the state court. And if, as in the present case, his final discharge is not obtained until after judgment has been rendered against him in the state court, he may produce that discharge to the state court and obtain the stay of execution which he asks for now."

In the case of Cavanaugh v. Fenley from the Supreme Court of Minnesota, reported in 94 Minn. 505, 103 N. W. 712, 110 Am. St. Rep. 382, the court was dealing with a state of facts similar to the case at bar, in which the bankrupt was sued by a creditor prior to the bankruptcy proceedings, and was discharged after the rendition of the judgment in the state court. The Supreme Court of Minnesota, in the course of its opinion, referred to the case of Boynton v. Ball, supra, and with reference to that decision said:

"This precise question has been before the courts of other states and before the Supreme Court of the United States under the old bankruptcy act, which, in the respects here under consideration, was the same as the present act, and relief was awarded to the bankrupt similar to that here applied for."

The case of Boynton v. Ball arose under the Bankruptcy Act of 1867, whereas the case from the Minnesota Supreme Court arose under the act of 1898 (U. S. Comp. St. §§ 9585–9656), containing, however, similar provisions on the subject under discussion.

The court further said:

"If an action be brought against him upon a claim existing at the time he was adjudged a bankrupt, his discharge, properly pleaded, is a complete defense, and it should not be in the power of a creditor to nullify the objects, purposes, and results of proceedings under the Bankruptcy Act by causing judgment to be entered before the bankrupt receives his final discharge. The debt here under consideration existed at the time defendant filed his petition in bankruptcy, was provable in the bankruptcy court, and its character was in no way changed by the entry of the judgment. It remained the same debt, changed only in form. It is true that defendant could have obtained from the court below a stay of proceedings, in the action in which the judgment was rendered, pending the administration of this estate in the bankruptcy court, but his failure in this respect is not fatal to his right to insist that effect be given to his discharge, nor does it matter that he made a general appearance in that action before or after the entry of the judgment; his release is just as effectual."

After citing numerous authorities sustaining the position taken by the court, the discussion under this head was concluded as follows:

"The rule laid down in these cases harmonizes with the purpose of the Bankruptcy Act, and gives force and effect to the discharge of the bankrupt, and we apply it in the case be-

fore us. It follows that the learned court below erred in refusing a perpetual stay of execution upon the judgment, there being no question but that defendant was by his discharge released from liability for the debt upon which it was founded."

These authorities are conclusive on the proposition that defendant Ledel was discharged from the debt evidenced by the judgment obtained against him by Rose Manufacturing Company, and that he is entitled to have the same perpetually enjoined.

[5] Appellant Charles Paggi had equally as meritorious a defense. Paggi was brought in under an allegation that he was a partner with Ledel in the business. The suit was based on certain notes and on an open account. Paggi denied the partnership under oath, and denied that he had executed or authorized the execution of the notes. This set up a perfectly valid defense to the cause of action alleged against him, and cast the burden of proof on this issue on appellee.

On this point Judge Talbot, for this court, in the case of Staton Auto Co. v. Hogg, 160 S. W. 982, said:

"An answer setting up a denial of partnership, as alleged in the petition, must be verified by affidavit. If not so denied, proof of the partnership is not necessary. If such denial is made, then the burden rests upon the plaintiff to prove the partnership, and if this is not done, the party denying the partnership under oath is entitled to judgment"—citing Hayden Saddlery Co. v. Ramsay, 14 Tex. Civ. App. 185, 36 S. W. 595; Robertson v. Du Bose, 76 Tex. 1, 13 S. W. 300.

[6] Thus it is perfectly apparent that these appellants show valid and meritorious defenses to the suit of appellee, and this brings us to the consideration of the difficult question in the case; that is: Have the appellants furnished a reasonable excuse for their absence from court when the case was tried? We must answer this from all the facts alleged and from all that can, by reasonable and fair intendment, be implied. As to the law controlling cases of this kind, there is little room for a difference of opinion. On the right, by a direct proceeding such as this, to reopen and try a case anew, Judge Stayton, for the Supreme Court, in Merrill v. Roberts, 78 Tex. 28, 14 S. W. 254, announced the following doctrine:

"Relief will not be granted unless the party seeking it can show that he was prevented from making a valid defense to the action in which the judgment had been rendered against him by fraud, accident, or the act of the opposite party, unmixed with fault or negligence on his part. He must be able to impeach the justice and equity of the verdict of which he complains, and to show also that there is good ground to suppose that a different result would be attained by a new trial."

Now, as to the facts, it appears that appellants' attorney was a resident of Pilot Point, Denton county, and that he sought information from the clerk as to the setting of the case by writing two letters and by making a special trip, all to procure this information. The clerk had, prior to this, furnished him information in regard to the setting of other cases; hence the attorney presumed he would do so on this occasion, and relied on him for the information. The voluntary petition in bankruptcy filed by Ledel under oath alleged, among other things, that he was the sole owner of Ledel Dry Goods Company. It also appears that Ledel offered a composition settlement to his creditors that was accepted, confirmed by the court, and the case dismissed. It further appears that Rose Manufacturing Company was one of the creditors whose claim sued upon was involved in these proceedings. All this tended, naturally and humanly, to lull the anxiety of the parties in regard to the pending lawsuit. It may be readily admitted that the attorney for appellants was negligent and should not have relied wholly on the clerk to furnish him information in regard to the setting of the case, although the clerk had on former occasions done so, and, besides, this is the usual means employed by nonresident attorneys to obtain such information. It may also be admitted that, as construed by the courts, the pendency of a bankruptcy proceeding did not, of itself, stay the civil suit pending in the state court, although appellants' attorney took that view of the matter, and very plausibly so, from the language of section 11 of the Bankruptcy Act, which reads that such suits "shall be stayed."

The case of Dancy v. Rosenberg (Tex. Civ. App.) 174 S. W. 831, presents a very similar case to the one under consideration in the strength of the equitable ground set up for a new trial. The plaintiff brought suit against the defendants for the value of services rendered. Defendants were regularly served with citation to answer at a term of the county court of Harris county that convened on January 5, 1914. Neither of the defendants appeared or answered until after judgment by default was rendered. When the case was called on January 7th, plaintiff demanded, and the court rendered, judgment by default against the defendants. On January 8th the defendants filed their answer setting up meritorious defenses, and, on the same day, filed a motion for a new trial, which was amended on January 12th, in which, as grounds therefor, they alleged in substance that at the time the judgment by default was rendered no evidence was offered by the plaintiff or heard by the court, that the motion to set aside was promptly filed and a meritorious defense alleged, and that defendants were ready and willing to promptly try and dispose of the case at that term of the court. No excuse, however, appears as a reason for their failure to file an answer on or before appearance day. On

appeal from the judgment overruling the motion for new trial, the Court of Civil Appeals said:

"We, therefore, think that the court below erred in rendering judgment for appellee by default, upon his petition, without proof of the matters therein alleged other than the petition, and that said court should have sustained appellants' motion for new trial upon this proposition. We also think that by their motions for new trial, as well as their answer filed in said cause, appellants show a meritorious defense to appellee's suit, and that they also show some excuse, though weak, for not having filed their answer before judgment was entered against them, and as they agreed to go to trial at once on the issues joined, so as not to prevent a trial at the appearance term, the court should have sustained their motions for new trial"—citing Scottish Union, etc., Ins. Co. v. Tomkies, 28 Tex. Civ. App. 157, 66 S. W. 1109; Pecos, etc., Ry. Co. v. Faulkner (Tex. Civ. App.) 118 S. W. 747; Springer v. Gillespie (Tex. Civ. App.) 56 S. W. 369; Chicago Ry. Co. v. Anderson, 105 Tex. 1, 141 S. W. 513, Ann. Cas. 1915A, 198; Gillaspie v. City of Huntsville (Tex. Civ. App.) 151 S. W. 1114.

Another case presenting equitable grounds addressed to the discretion of the court is that of Hubb-Diggs Co. v. Mitchell (Tex. Civ. App.) 231 S. W. 426. In order that the language of the court in disposing of the contention of the parties may be understood, the following short statement of the case is necessary:

The plaintiff brought suit against Hubb-Diggs Company, a corporation, in the county court of Coleman county. The defendant was first cited to answer a term of court beginning the first Monday in July, 1920. The return day stated was incorrect, and plaintiff procured the issuance of another citation showing the correct return date to be the first Monday in June, and the same was served in time for the June term of court. Judgment by default was rendered against the defendant on appearance day at the June term. The first citation was delivered by the president of the defendant company to its attorney at Fort Worth for attention, who, in due time, forwarded to the clerk of the court, and had filed, a plea of privilege, and, at the time of filing the same, advised plaintiff's attorneys that such plea had been filed; whereupon, plaintiff's attorneys informed defendants' attorney that judgment by default had already been rendered.

Neither of the officers of the defendant nor its attorney had any actual knowledge of the service of the second citation, although service thereof was legally perfected by leaving a copy, together with a certified copy of plaintiff's petition, at the principal office of the defendant. The trial court overruled a motion to set aside the judgment by default, from which an appeal was perfected.

The Court of Civil Appeals, in reviewing the case, held that defendant set up a meritorious defense to the suit, and, on the showing of an equitable excuse for its failure to appear and answer, the court used the following language:

"From the sworn answer and motion and the other evidence considered at the hearing, it fairly appears that, while there was legal service of the second citation, the officers of the corporation had no actual knowledge of it until after the judgment was taken. It is further shown that appellant and its counsel were misled into suffering judgment by default to be taken by the erroneous return date stated in the first citation. We find an utter want of bad faith indicated, and, while these considerations do not afford a legal excuse, they have a strong appeal in equity. * * * Upon the whole, we think the showing made presented an equitable excuse for both the failure to appear and answer before default judgment was rendered, and to sooner present the defense."

In the light of these cases, and considering the entire group of facts and circumstances alleged by appellants, we have concluded, using the language of one of the cases, that they "show some excuse, though weak, for the failure to be present when the case was tried."

[7] It is contended, however, that the default judgment against Paggi was correct, in that his answer was not called to the attention of the court. Appellate courts of this state have in numerous decisions affirmed the correctness of this proposition. Gillaspie v. Huntsville (Tex. Civ. App.) 151 S. W. 1114, London Assur. Corp. v. Lee, 66 Tex. 247, 18 S. W. 508; Hopkins v. Donaho, 4 Tex. 336; Pierson v. Burney, 15 Tex. 272; Lytle v. Custead, 4 Tex. Civ. App. 490, 23 S. W. 451. This suggestion, however, reaches the crux of the question under consideration. The appellants allege which allegation is before us unchallenged, that the judgment was fraudulently obtained; that the court and jury were led to believe that Paggi had not filed his answer in said cause. It is not to be presumed that the court would have rendered judgment against Paggi on incompetent evidence if his sworn denial of partnership had been brought to its attention. The absence of appellant and his attorney did not relieve appellee from the burden of proving by competent evidence the essential fact necessary to establish the liability of Paggi; that is, the existence of a partnership between him and Ledel.

[8] There is another view, however, that renders the judgment by default against Paggi fatally defective; that is, that it was based on hearsay, hence incompetent evidence. Evidence within itself wholly incompetent, and therefore without probative force, gains no vitality because admitted without objection. It will not support a verdict by a jury or a finding of fact by a court. This is true, whether the judgment is by default or otherwise. Southern Surety Co. v. Nalle & Co.

(Tex. Com. App.) 242 S. W. 201, and authorities cited; Home Nat. Bank v. Herd (Tex. Civ. App.) 250 S. W. 250. In the case under consideration, the allegation, the truth of which is admitted by the demurrer, is that the only evidence introduced on the trial to prove the partnership relation between Paggi and Ledel was hearsay, hence without probative force, and insufficient to sustain the judgment.

We have concluded from all these considerations that the court erred in dismissing the petition of appellants and that the case must be reversed. It is therefore ordered that the judgment below be reversed and the cause remanded for trial, with instructions to the court to issue the temporary injunction prayed for pendente lite.

Reversed and remanded, with instructions.

VAUGHAN, J. (dissenting). In the disposition of this case as to appellant Theo Ledel, the writer agrees with his brethren, but finds himself unable to do so as to appellant Charles Paggi. Regarding the questions passed upon, in the disposition of which the writer has been unable to concur, of such vital importance by reason of the uncertainty same will inject into the termination of the right of litigants to be heard on questions passed upon by courts after having had an opportunity, through the exercise of due diligence, to have had, in the fullest meaning of the term, "their day in court," the writer feels constrained to express the following views thereon:

For the material on which to base the discussion we are remitted to the case as presented by appellants' pleadings, and the writer accepts the statement as contained in the majority opinion, and, in the light of same, will discuss the following four questions, to wit: (a) The diligence exercised by appellant Paggi in the prosecution of his defense; (b) fraud in the rendition of the judgment; (c) the rendition of judgment by default notwithstanding answer of appellant Paggi had been filed in due time before the rendition of judgment appealed from, but which answer had not been called to the attention of the court; (d) whether or not the judgment appealed from was subject to attack by the proceedings instituted by appellants by reason of the fact that same was rendered on insufficient or illegal evidence.

To the mind of the writer the allegations, construed in the strongest light, utterly fail to show the slightest degree of diligence as that term immemorially has been used in its application to the attention and care a litigant is required in the course of a judicial proceeding to exercise in the prosecution of a cause of action, or the urging of a defense thereto. In one breath it is alleged that the verdict and judgment rendered in said cause was procured through fraud, in that the trial court was led to believe that appellant Paggi had not filed his answer in said cause, and, before the warmth of such utterance ceased, we find the allegation which diametrically opposes the one just referred to, to wit, that the only evidence introduced in order to prove that he was a partner of the said Theo Ledel, one of the appellants herein, was two mercantile reports. Why was this evidence to prove the existence of a partnership introduced unless the answer of said appellant was before the court denying the existence of said copartnership? which alone made it necessary to prove the existence of the partnership as alleged, for, without such answer, the issue requiring the introduction of evidence to establish the existence of a partnership would not have been raised, and certainly it should not be assumed that the appellees unnecessarily, as plaintiffs in said original suit, would have injected this burden into the case. From this allegation it should be assumed that the answer of appellant Paggi was before the court, and, on the issue as to partnership presented, the evidence was heard by the court.

At best, the allegations of Paggi are but a shadowy veil of insinuations that somebody perpetrated a fraud whereby his answer was not considered by the court, in that the court was induced to believe that an answer had not been filed by him. With the insinuations appellees are not connected, unless vivid imagination is resorted to so as to read in between the lines the imputation that the "fraud" was the act of some one adversely connected with the litigation. In other words, the allegation of fraud is so imperfect, vague, and uncertain that, in order to give it the effect of a specific allegation in any respect, a vital omission must be supplied by inference, to wit, that because of the interest of appellees, they being in position to be benefited by a fraudulent act, the fraud imputed to some one by the allegation was committed by one of the appellees. Surely that presumption should not be favored in order to sustain such an imperfect allegation, for the existence of fraud is never presumed, but, like any other fact subjected to judicial investigation, must be properly pleaded and established by legal evidence. However, that the allegations may be considered in the strongest effect in behalf of Paggi, let it be assumed that his answer was not called to the attention of the court. What of his diligence? The writer is aware of the fact that it is of prime importance in all litigation that every litigant have his day in court; that is, by the use of proper diligence to be heard in the presentation of his cause of action, or, on the other hand, in presenting his grounds of defense; that next in importance to society is that there shall be an orderly determination and conclusion of all litigation. Therefore, in interest of a speedy determination of all litigation, litigants from time

immemorial have been required to use due diligence in the preparation of a suit for trial, whether it is that of plaintiff to prepare to present his cause of action, or that of defendant to prepare to present his defense.

Paggi, as an excuse for not presenting his defense, as revealed by his answer filed two months before the judgment was rendered in cause No. 32723a, Rose Manufacturing Co. v. Ledel Dry Goods Co., and which he offers as an excuse for failure on his part to exercise due diligence, in effect alleged the filing of his answer, the fact that his attorney relied upon the clerk of the court to notify him of the setting of the case when 'same should be set, and that he relied upon Messrs. Leake & Henry, attorneys for plaintiffs in said cause No. 32723a, to notify him of the setting of the case, as it was their duty to do according to the ethics of the profession; that he was not notified by said Leake & Henry or any one else of the setting of the case.

It must be apparent to even the casual observer that nowhere is it alleged, by inference or otherwise, that the clerk of the court promised to notify appellants' attorney of the setting of the case, or that the attorneys representing the plaintiffs in said suit promised to notify him, or that either had fraudulently concealed from him the setting of the case, or that either were guilty of any character of act or conduct whereby he was prevented from being advised of the proceedings had, or to be had, in reference to said suit, or that relieved him from exercising due diligence. The legal duty did not rest upon either the clerk of the court or the attorneys for the plaintiffs to notify him in reference to the setting of the case, and, if the clerk of the court had assumed by an express agreement to have performed this service for appellants' attorney, it would not have been such an agreement, the breach of which, unless caused by the act or conduct on the part of those adversely interested, would relieve appellant Paggi from the effects flowing therefrom.

In addition, the writer is constrained to say that, if the clerk agreed to notify appellants' attorney and he depended upon such agreement, and the clerk failed to perform his obligation based upon a valuable consideration, then, possibly the clerk, as an individual, might be liable to appellant for such damages as he may have suffered, but certainly, from the allegations made by appellants, the appellees in this case were in no wise interested in any agreement that appellants' attorney may have made with this clerk, and, whether the mistake or negligence was on the part of Paggi or his attorney, the effect would be the same, for, as held in the case of Fisher v. Hemming (Tex. Civ. App.) 164 S. W. 913:

"It is no ground for relief against a judgment recovered against a party that it was obtained by reason of the mistake or negligence of his attorney; such mistake or negligence being imputed to the client."

Assuming that the answer of Paggi presented a valid defense which he was prevented from making by virtue of the existence of the facts as alleged by him, the relief from the effect of the judgment rendered against him now sought should not be granted because it cannot be gathered from the allegations that he was prevented from making such defense either by fraud, accident, or the act of the opposite party, unmixed with fault or negligence on his part. Construing his allegations in the strongest light in his behalf, it is apparent therefrom that the injury complained of by him is due entirely to the fault of his attorney in not using that degree of diligence required of those representing litigants, and not due in any respect to any fraud or any other act of appellees, or any one of them, and certainly not on account of any accident.

It may be conceded that the allegations in behalf of Paggi show that he had a valid defense to the suit as brought by Rose Manufacturing Company, and that an injustice was done him through the judgment rendered in said cause; yet that will not suffice to grant him the relief sought, having failed to show that he was prevented from urging his defense by reason of fraud, accident, or the act of the other party. This burden Paggi signally failed, even from his allegations, to discharge. This position is amply supported by the following decisions, from which the writer feels warranted in quoting in order to show the application of the principles therein announced to the instant case:

J. M. Brownson et al. v. J. W. Reynolds, 77 Tex. 254, 13 S. W. 986, in which it is held:

"Equity will not grant a party to a judgment a new trial when the failure to have his case properly presented resulted from the negligence or mistakes of his counsel." Further, "equity will not grant a new trial and set aside a judgment except upon a showing of strict diligence in the prosecution of the cause, and upon proof that after doing all that such diligence required he had been deprived by fraud, accident, or other uncontrollable circumstances of the opportunity of properly presenting his case on the trial."

In Johnson v. Templeton, 60 Tex. 238, the court held:

"To obtain a new trial after the expiration of the term, something more than that injustice has been done must be shown. It must appear: (1) That the former judgment was not caused by any negligence of him who seeks to set it aside, but that diligence was used to prevent it; (2) that he had a good defense to the action, which he was prevented from making by fraud, accident, or the acts of the opposing party, wholly unmixed with any fault or negligence of his own; (3) that there is good cause to believe that a different result will be obtained by a new trial;" and,

further, "bills seeking relief from final judgments, solemnly rendered in the due and ordinary course of the administration of justice by courts of competent jurisdiction, are always watched by courts of equity with extreme jealousy, and the grounds on which interference will be allowed are narrow and restricted."

To the same effect is the holding in Wagley v. Wagley (Tex. Civ. App.) 230 S. W. 493, Harn et al. v. Phelps et al., 65 Tex. 592. and Nevins v. McKee, 61 Tex. 412, in which Willie, C. J., in delivering the opinion for the court, held:

"It is not sufficient to show that injustice has been done. He must show that the judgment resulted from no negligence on his part; that he had a meritorious defense, and had used diligence, and was prevented from making his defense by the fraud, accident or acts of the opposite party, wholly unaffected by any fault or negligence of his own."

It is further contended that the judgment rendered against Paggi is false and fraudulent by virtue of the following allegations: That the. judgment in said cause rendered against him, the said Paggi, is false and fraudulent, in that it says that the defendant Paggi wholly made default, when, in truth and in fact, the said Paggi had his answer filed in this cause in this court on the 2d day of March, 1922. The preparation and filing of the answer were only two of the essential steps necessary to take in the presentation of his defense. It was not incumbent upon the trial judge to ascertain whether or not an answer had been filed. The duty rested upon Paggi or his attorney representing him to properly call to the attention of the trial court, not only the filing, but the contents of the answer. The fact that his answer was not so called to the attention of the court was due exclusively and solely to the negligence of Paggi's attorney, and the rendering of the judgment, notwithstanding the filing of the answer, same not having been called to the attention of the court, did not in the least render the judgment entered in said cause false and fraudulent, but was properly rendered as on default.

The holdings in the case of Hopkins v. Donahoe, 4 Tex. 336, are sufficient on which to rest the above proposition. The following liberal quotation is made therefrom:

"To hold that the mere apparent filing of the answer by the clerk, when not noted in the minutes, nor otherwise shown by the record, shall overbear and control the recitals of the judgment, would be at variance with the most obvious principle, and would open a door to abuses which may be readily conceived. Let this principle be established, and, to reverse a judgment, it would only be necessary for the defendant, before the fifth day of the term, to cause the clerk to mark upon his answer 'filed,' which is a mere clerical act, done of course at the instance of the party, without an inspection of the paper, or a knowledge of its contents; then to stand silently by, and permit judgment to be taken by default against him; and, when execution is about to issue, obtain a writ of error. The answer, being found by the clerk among the papers of the case, would be embodied in the transcript, and made a ground for reversing the judgment. There is no principle of law which requires this court to sanction a practice susceptible of such abuse.

"But, if, in point of fact, the answer was on file, it does not appear to have been brought to the notice of the court. A defendant who has appeared and answered is presumed to be present in court, and cognizant of the action of the court in respect to his case, until it has been disposed of, for the term, by a trial or continuance. When the plaintiff proposed to take his judgment by default, it was the duty of the defendant to have objected, and brought his answer to the notice of the court; or, if he had inadvertently permitted judgment to go without objecting at the time, when apprised of it, which, if a vigilant suitor, he must have been, it was incumbent upon him to have moved to set aside the judgment. This, upon his showing that his answer had been filed, the court would have done of course. But this, this defendant did not ask, but stood by in silence, while the court proceeded to adjudicate his rights. And shall a party, who was silent in the court below, be permitted to come into this court, and first ask here the relief which would have been afforded him there, had he asked it? Shall he be permitted thus to take advantage of his own negligence and wrong? He who was silent in the court below, where he ought to have spoken, and has thus permitted the opportunity of making his defense, to pass by, ought not to be first heard in this court. * * *"

From the allegations contained in appellants' pleadings above quoted, it will be noticed that the relief from the judgment rendered in said cause No. 32723a is also sought on the ground that same was erroneously rendered, in that secondary or illegal evidence was received in proof of material allegations contained in plaintiff's petition in said cause. The application of the following well-recognized principle of law should be sufficient to deny the relief sought by appellant on this ground, to wit:

"The power to vacate judgments on motion is confined to cases in which the ground alleged is something extraneous to the action of the court or goes only to the question of the regularity of its proceedings. It is not intended to be used as a means for the court to review or revise its own final judgments, or to correct any errors of law into which it may have fallen. That a judgment is erroneous as a matter of law is ground for an appeal, writ of error or certiorari, according to the cause, but it is no ground for setting aside the judgment on motion. Thus the reception of secondary or illegal evidence in proof of a fact is no ground to annul the judgment rendered in the case." Article 329, p. 506, vol. 1, Black on Judgments (2d Ed.), and authorities cited in notes 254 and 255 under said article.

The application of the above rule has been recognized by the courts of this state, notably the case of Harn v. Phelps, supra, in which it was held:

"When, in the exercise of lawful power, a court has rendered a final judgment, it must be held conclusive between the parties thereto, except in a proceeding appellate in character, unless some ground other than that it is probably unjust is shown, which, under the settled rules of law, is deemed sufficient to authorize a court of equity to re-examine the case"—citing, in support of this holding, Johnson v. Templeton, supra; Nevins v. McKee, supra.

Appellant Paggi urges as one of his principal grounds for the relief sought that the judgment rendered was without sufficient legal evidence. The judgment was rendered as on default after proper legal service of citation in the manner and form required by law. No statement of the facts proven (if any) on which said judgment was rendered is before us. On this ground appellant is not entitled to the relief sought; for, as so aptly and well said in the case of Callison v. Autry et ux., Adm'x, 4 Tex. 371, in the absence of a statement of facts it is presumed in support of the judgment that every fact has been proved which could have been legally proved under the averments in the petition. The same presumption obtains in favor of a judgment by default. In the case of Long et al. v. Wortham, 4 Tex. 381, it was held that, "where there is judgment by default, the facts set out in the petition, are to be taken as proved" and admitted. This, the writer is persuaded to believe, announces a rule of law applicable as well to the case at bar as to the cases in which same was announced.

The above is sufficient to show the reasons actuating the writer to dissent from the majority opinion, and why, in his opinion, the judgment of the court below should have been affirmed as to appellant Paggi.

On Motion to Certify to Supreme Court.

LOONEY, J. [9] This case was reversed and remanded on February 16, 1924, by a majority of the court. Mr. VAUGHAN, associate justice, dissented on conclusions of law material to the decision of the case. Under article 1620, Revised Statutes, as amended by the Thirty-Eighth Legislature (c. 38, p. 72, printed Session Acts), extending the scope of the statute so as to authorize the certification of questions involved in cases appealed from the county as well as from the district courts, the questions involved in the dissent would have been certified if a timely motion for the certificate had been filed.

The motion of appellees for rehearing was overruled on March 15th, and the motion asking the court to certify to the Supreme Court was not filed until March 21st. To grant the motion the order heretofore entered by the court overruling appellees' motion for rehearing would have to be set aside. The court has the power to set aside the order; but, under our view, there exists no good reason for such action, and we are unwilling to do so for no purpose except to certify the case. This would, in our opinion, be a precedent for a practice the tendency of which would be to delay the final disposition of appealed cases. This course seems to have been followed by the San Antonio Court of Civil Appeals in First National Bank of Eagle Lake v. Robinson, 135 S. W. 1115. In that case the motion was based on conflicting decisions of different courts. In disposing of the motion, among other things, the court said:

"We think that, in order to entitle a party to insist upon the certification of a question as a matter of right, he should lay a basis for it and bring the fact of conflict to the attention of the court in his motion for rehearing, or before his motion is finally acted upon."

If our refusal to certify the dissent would deprive appellees of any legal right under the circumstances, a different question would be presented, but it does not do so. Appellees, by reason of the dissent have the legal right to take the case to the Supreme Court on writ of error for its decision of the material questions of law involved. Vernon's Ann. Civ. St. Supp. 1918, art. 1521.

The motion to certify is refused.