## MOBLEY *v.* PIERCE *et al.*

1. Declarations of deceased persons, related by blood or marriage to the family in question, are admissible in matters of pedigree, but before such declarations are receivable in evidence the relationship of the declarant with the family must be established by some proof independent of the declaration itself.

2. The foregoing rule is further qualified in that the declaration must have been made ante litem motam.

3. Where a witness testifies that the facts relating to pedigree and heirship are derived in part from the declarations of a deceased person, and in part from the contents of court papers, his testimony is inadmissible, as being dependent on the existence and contents of court documents not shown to be lost or inaccessible.

4. Family repute can not be established by the testimony of a witness who is unacquainted with any member of the family, and whose information is derived solely from the declaration of a person since deceased, whose connection with the family is not made to appear otherwise than by his own declaration.

NOVEMBER 13, 1915.

Equitable petition. Before J. G. Cranford, judge pro hac vice. Echols superior court. September 15, 1914.

*J. L. Sweat* and *L. A. Wilson,* for plaintiff.

*Dan R. Bruce* and *R. G. Tison,* for defendants.

EVANS, P. J.   1.   The petition charged the defendant with cutting timber belonging to the plaintiff, located on lot of land number 351 in the 13th district of originally Appling, now Echols county, and asked for judgment for the trespass already committed, and for injunction against its continuance.   The defendant in his answer set up an independent title, and denied the plaintiff's ownership of the timber.   The plaintiff was thus put upon proof of his title. He offered in evidence a certified copy of a grant from the State of Georgia to Thomas Taylor, dated June 16, 1848, and mesne conveyances to himself from certain persons, who, by parol evidence, he undertook to show were the heirs at law of Thomas Taylor.   This testimony was rejected, and a nonsuit resulted because of this chasm in his title.   The witness who offered to give this testimony was the plaintiff's attorney, who testified as follows: "Some thirty or forty years ago, while residing at Homerville, Georgia, and as a practicing attorney in the courts of this State, Thomas W. Cooper, accompanied perhaps by others, came to his office in Homerville, having with them at the time 176 original plats and grants from the State of Georgia to Thomas Taylor, of Bibb county, including a grant to the lot in controversy; and that he represented said Thomas W. Cooper, acting for himself and all of his brothers and sisters, in litigation pending in Clinch superior court and elsewhere, wherever there was litigation affecting the lands covered by said 176 grants; and that he learned, from information obtained from said Thomas W. Cooper and others, and from documentary evidence they had in connection with said original grants, that they were the brothers and sisters, nephews and nieces, and next of kin of said Thomas Taylor, who died in Brooklyn in 1870; that the date referred to by him when said Thomas W. Cooper called upon him with the grants aforesaid was subsequent to the death of said Thomas Taylor in 1870, who had gone from Macon to New York prior to his death in Brooklyn; and that he not only had the statements of Thomas W. Cooper and others of these heirs, but in addition to the original grants from the State to all of said Thomas Taylor lots which were in their possession as heirs, but other documents bearing same out, and that it was based upon that information and reputation in the family that he recognized

said parties as heirs at law of said Thomas Taylor, deceased. He stated further, that in addition to this information and general repute that said ten nephews and nieces were the descendants and next of kin of said Thomas Taylor, that two of the brothers had died previous to the making of the 'big deed' [being the deed made January 2, 1899, from the reputed heirs at law of Thomas Taylor, under which deed the plaintiff claims title], their interest going to the other eight brothers and sisters; and that before the 'big deed' was made, and subsequent to the information and documents referred to by him, said Thomas W. Cooper, who lived for a while . at Valdosta, Georgia, upon his removal back to Chicago he then and there departed this life, leaving a wife and five children, who appear to have joined with the other surviving brothers and sisters and alleged heirs at law of Thomas Taylor in making said 'big deed.'" On cross-examination the witness testified, that "he was not related to Thomas Taylor, had never known him in person; that what he had testified to was not what Thomas Taylor had ever told him, but was gathered from information from those that he dealt with as heirs at law of Thomas Taylor, and documents in their possession; that he did not recall which one of the other heirs may have been with Thomas W. Cooper at the time he first came to his office in Homerville or subsequent thereto, but his connection with the matter went through a long course of dealings, continuing for many years, during which time he was connected with various kinds of litigation in different courts affecting the lands in question; that he did not know of his own knowledge when Thomas Taylor died, but what he knew was only from information and documents; that it was from evidence gathered in that way that he knew of the death of Thomas Taylor; that he only knew from information gathered from various sources sustaining the family repute that Thomas Taylor died leaving no wife or children, his wife having died before him, and that the ten children of his deceased sister claimed to be his next of kin and heirs at law." On redirect examination the witness testified: "That from sources of information already testified about, including information from Thomas W. Cooper and others of the family, that his information was that Thomas Taylor of Bibb county, the grantee of the 176 lots of land referred to, was the uncle of said Thomas W. Cooper, and his other brothers and sisters, that his

wife had died long prior, that the ten nephews and nieces by his only deceased sister, including Thomas W. Cooper and others, were recognized by him during his lifetime as his next of kin and heirs at law, and that subsequently in 1870, having prior to that time removed from Macon, he died in Brooklyn; . . that the 176 grants in the possession of said Thomas W. Cooper, and delivered to witness and inspected by him, embraced the 176 lots in the 13th district covered by the 'big deed' tendered in evidence and purporting to be from said heirs to Rollin J. Nelson; that there are other lots embraced in said 'big deed,' but said 176 grants covered the 176 lots in the 13th district of originally Appling, now Echols and Clinch counties, Georgia, and a part in the State of Florida." Upon being further cross-examined the witness testified: "That he had no personal acquaintance with Thomas Taylor, and that he did not know whether he was dead or alive, except from reports and documentary evidence, and that he had never seen him; . . that he had seen official court documents establishing the death of Thomas Taylor; and that there were various suits and litigations in which he had control of all documents and things of that sort, which showed that said Thomas Taylor died without leaving a wife or children, and that his ten nephews and nieces, children of his deceased sister, were his next of kin and heirs at law; that he knew same from reputation in the family and from documents which verified that reputation, and that said Thomas W. Cooper stated that his uncle, Thomas Taylor, was dead."

It will be observed that the witness relied on to- establish the fact that the plaintiff's grantors in the deed to Nelson were heirs at law of Thomas Taylor obtained his information from Thomas W. Cooper, since deceased. Pedigree, including descent, relationship, birth, marriage, and death, may be proved by the declarations of deceased persons related by blood or marriage. Civil Code (1910), § 5764. But before the declarations of such deceased persons may be received in evidence, the fact of relationship must be shown by other evidence. *Greene* v. *Almand,* 111 *Ga.* 735 (36 S. E. 957) ; *Terry* v. *Brown,* 142 *Ga.* 224 (82 S. E. 566). Where the declarations of persons, since deceased, concern matters far distant in the past, resort must be had, necessitate rei, to circumstances to establish such relationship. Perhaps the leading case on the subject is that of *Fulkerson* v. *Holmes,* 117 U. S. 389

(6 Sup. Ct. 780, 29 L. ed. 915). That case was an action in ejectment, and the plaintiffs claimed under a patent from the State of Virginia to Samuel Young, and undertook to show title derived from Young by deed from Samuel C. Young to John Holmes, which recited that the patentee had died intestate, and that said Samuel C. Young, the grantor, was his only child and heir. This deed was more than 60 years old, came from the proper custody, and was received in evidence under the rules applicable to the admission of ancient documents. It was further shown that the patent to Samuel Young was found among the papers of John Holmes, and that the lots therein described had been listed for taxation to John Holmes or his heirs for a period beginning with the year 1838 down to and including the year 1875, which was after the bringing of the suit, during which time Holmes and his heirs at law had paid the taxes assessed on the land, or the same had been released to them by law. It was considered that the similarity of names, the fact that the patent to Samuel Young was found, with the deed of Samuel C. Young to John Holmes, among the papers of the latter after his death, and the circumstance that Samuel C. Young had assumed, as the son and sole heir at law of Samuel Young, to convey the landed estate of the latter, and his grantees for more than 60 years had claimed title under his conveyance, and that the right of Samuel C. Young to make the conveyance was not shown to have been challenged by any persons claiming under Samuel C. Young, were sufficient to prove that Samuel C. Young was of the family of Samuel Young, and to show such relation as would render the declarations of Samuel C. Young, contained in the recitals in the deed, evidence sufficient to prove the facts contained in the recital in his deed to Holmes. In Young v. Shulenberg, 165 N. Y. 385 (59 N. E. 135, 80 Am. St. R. 730), the plaintiff proved a record title commencing in 1794, when letters patent were granted by the State of New York, and extending through various mesne conveyances until 1872, when the apparent title vested in William Claflin, of whom, in 1893, the plaintiff purchased the privilege of cutting the timber on the land. The attack made upon the plaintiff's title by the defendant was that there was no legal evidence to show that Anne Ellice and six others, all residents of England, who in July, 1817, conveyed 200,000 acres, including the locus in quo, in considera-

tion of 20,000*l.*, were the widow and heirs at law of Alexander Ellice, also a resident of England, who took title from the patentee in 1795. It appeared that the six deeds constituting the chain of title from the State had all been recorded, and that they were all in the possession of Claflin, the last grantee, who kept them together as muniments of his title. It further appeared that the deed of 1817, which was acknowledged in London before the minister of the United States to Great Britain, recited that Alexander Ellice, of London, died intestate, seized of said premises, leaving the grantors as his widow and heirs at law. The recital in the deed that Anne Ellice and her cograntors were the heirs at law of Alexander Ellice was relied upon to establish those facts, and the court recognized that it was necessary for the plaintiffs to show that she was a member of the family of Alexander Ellice before the recitals in the deed could be considered for this purpose. It was held that the proof of such relationship, which rested upon the identity of the family names, the certificate of acknowledgment before the United States minister, and the custody by the proper party of the deeds showing title in Alexander Ellice by conveyances running back to and including the original patent, together with the further fact that at the time of the trial 80 years had elapsed since the acknowledgment of the deed, and no adverse claim had ever been made to the land, were sufficient to establish, in the absence of rebutting evidence, that Anne Ellice and her cograntors were members of the family, and hence in a position to speak on the subject of pedigree. Upon similar facts the doctrine of these cases was applied in Mann *v.* Cavanaugh, 110 Ky. 776 (62 S. W. 854), and Davis *v.* Moyles, 76 Vt. 25 (56 Atl. 174). In all of these cases there existed something more than the bare fact of the patent being found in the possession of one deraigning title from the person to whom it was issued. While we recognize that the factum of relationship can only be expected to be established by the best evidence of which the case admits, and that but slight proof of the relationship of the declarant with the family will be required, yet we are unable to find any case which goes to the extent of holding that the bare possession of a grant of land from the State is sufficient to authorize in evidence the declaration of one, since deceased, made while in possession of such grant, that he was a member of the family of the person to whom the grant was issued.

2. It further appears that the declaration of Thomas W. Cooper to the effect that he and his brothers and sisters, nephews and nieces, were heirs at law of Thomas Taylor, deceased, was made at a time when it was to his interest to make it, and at a time when he contemplated instituting or defending litigation touching the title to the land; and there was no evidence, other than his own declaration, going to show that Thomas W. Cooper was related by blood or marriage to Thomas Taylor or his family. The declarations of deceased members of a family, to be received for the purpose of proving family relationship, must be made ante litem motam. Says Mr. Wigmore, in volume 2 of his work on Evidence, § 1484: "The existence of a controversy is only one circumstance (though the most common one) likely to produce a bias fatal to the trustworthiness of the declaration. Judicial opinion seems to hold, and properly, that other considerations may under certain circumstances operate to exclude the declarations. In general, they would be excluded where there is any specific and adequate reason to suppose the existence of a motive inconsistent with a fair degree of sincerity." According to the witness these declarations were made to him with a view of his employment as an attorney at law to assert this title; and, under the rationale of the principle quoted from Dean Wigmore, the declarations were not made ante litem motam, but in view of pending or contemplated litigation.

3. Another fatal objection to this testimony is, that the witness did not base his information solely upon the declarations of Thomas W. Cooper, but upon such declarations and the contents of court documents, which had been examined by the witness. These documents were not accounted for; and to allow the witness to testify as to their contents would be a flagrant violation of the rule respecting secondary evidence. *Mobley* v. *Baxter,* 143 *Ga.* 565 (85 S. E. 859).

4. Another source of the witness's information is that based upon alleged family repute. The witness had never seen Thomas Taylor, nor did he know any of the family, except Thomas W. Cooper and his unnamed coheirs, who accompanied him. It was not shown, other than by the declaration of Cooper, that they were members of the family of Thomas Taylor; and such declaration has no probative value, without extrinsic evidence establish-

ing the fact that Thomas W. Cooper was a member of the family.

We are asked to review the ruling made in *Greene* v. *Almand*, supra, on account of certain criticisms made of that case by Mr. Justice Lumpkin in *Terry* v. *Brown*, supra. It will be noted from the opinion in the latter case that the criticism was not of the principle that the fact of relationship must be shown by other evidence, as the writer specifically said: "Where statements of deceased persons are offered in evidence on the subject of pedigree, it is of course a general rule that there must be some extrinsic evidence that such declarant was related to the family; but where the question is whether any, or what, relationship exists between two supposed branches of the same family, it is sufficient to establish the connection of the deceased declarant with either branch, in order to render such declaration admissible." Even if the ruling in 111 *Ga.* should be modified as suggested in 142 *Ga.*, it would be of no service to the plaintiff, as no such point arises here.

*Judgment affirmed. All the Justices concur, except Beck, J., absent.*