MARGULES v. TERRY et al.    (No. 9367.)

(Court of Civil Appeals of Texas. Dallas. April 25, 1925.)

1. Evidence   ⬅272—Statement voluntarily made against interest by party to suit not within hearsay rule.

Statement voluntarily made against interest by party to suit, though hearsay, does not come within general rule.

2. Appeal and error  ⬅837(11)—No effect given to hearsay evidence, though record discloses no objection made thereto.

No effect is to be given to hearsay statements not admissible under rules of evidence, although record does not disclose objection made thereto.

3. Appeal and error  ⬅989—In passing on question whether answers to special issues are contrary to evidence, only evidence sustaining verdict will be considered.

In passing on question whether answers of jury to special issues are contrary to undisputed evidence, Court of Civil Appeals must discard all evidence favorable to appellant, and consider only that sustaining verdict.

4. Trial  ⬅142—When evidence is for jury or for court stated.

When evidence is such that reasonable minds may fairly differ on questions of fact, determination thereof is for jury, and it is only where facts are such that all reasonable minds must draw same conclusion that it is question of law for court.

5. Negligence  ⬅134(1)—Evidence held not to sustain finding injury to pedestrian from fall of materials from building did not occur through negligence.

In action by pedestrian for injuries by fall of materials from building, evidence *held* not to sustain special finding of jury that injuries did not result from negligence of defendants.

Error from District Court, Dallas County; Kenneth Foree, Judge.

Action by Sam Margules against Roy H. Terry and others. Judgment for defendants, and plaintiff brings error. Reversed and remanded.

Currie McCutcheon, of Dallas, for plaintiff in error.

H. M. Kisten, of Dallas, for defendants in error.

VAUGHAN, J. This suit was filed on the 30th day of March, 1923, by plaintiff in error against Roy H. Terry, R. E. L. Terry, Mrs. H. M. Kisten and husband, H. M. Kisten, defendants in error, and Grover Cleveland Terry, Ruth D. Shafeloe and husband, Wm. T. Shafeloe, for damages, plaintiff in error alleging that while proceeding as a pedestrian along Harwood street in the city of Dallas, a public street and highway, at about 2:30 p. m. February 20, 1923, he received certain personal injuries on account of the brick débris, and a portion of the building of defendants falling from the top of said building onto and striking him; and, further, that the defendants were guilty of negligence in that they failed to keep the building from which said material fell in reasonably safe repair; and that they, and their agents, failed to warn plaintiff of the dan-

---

⬅For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

ger on account of the condition of said building; that they failed to protect the sidewalk so that the cement, brick, and débris would not fall upon pedestrians in the lawful use of said sidewalk adjoining and contiguous to said building; and that they failed to fence off said sidewalk so that pedestrians, generally, in the lawful use of said sidewalk and street, including plaintiff, could not use same on the occasion in question. No service of citation was had on the defendants Grover Cleveland Terry, Ruth D. Shafeloe and husband, Wm. T. Shafeloe, and said cause as to them was dismissed. Defendants in error filed a general and special demurrer, general denial, and special plea. By trial amendment the cause that called forth the special demurrer was removed. The special pleas set up the defense of independent contractor. The court submitted the case on its merits to a jury upon special issues; those material to this appeal being as follows:

"(1) Did the defendant Roy Terry fail to keep the building involved in this lawsuit in reasonably safe repair?

"(2) If you have answered the above and foregoing issue 'Yes,' then was said failure (if any) negligence?

"(3) If you have answered the above and foregoing issue 'Yes,' then was such negligence, if any, the direct and proximate cause of the accident (if any) involved in this suit?

"(4) Did the defendants, their agents, servants or employés, fail to warn plaintiff of the danger (if any) on account of the condition of said building?

"(5) If you have answered the above and foregoing issue 'Yes,' then was said failure (if any) negligence?

"(6) If you have answered the above and foregoing issue 'Yes,' then was such negligence, if any, the direct and proximate cause of the accident (if any) involved in this lawsuit?"

To each of the above, and all other issues submitted, the jury answered "No."

On this verdict judgment was rendered in favor of defendants in error, which is now before us for review through writ of error, duly prosecuted, based upon proper motion filed by plaintiff to set aside the findings of the jury on each special issue, and to grant him a new trial, because the answers of the jury to the special issues are contrary to the undisputed evidence.

[1, 2] The defense that the work on the building in question was being performed by an independent contractor was not presented; the only evidence on that issue being uncontradicted, viz., Roy H. Terry, one of the defendants, testified:

"The man I employed to do the work told me that he was working in the rear of the building and that the thing just fell off, whatever it was that fell, without his knocking it off. He and his men were working in the rear of the building when the stuff fell off the front of the building."

This is hearsay but does not come within the general rule applicable to evidence of this character because it is a statement voluntarily made against interest by one of the parties to the suit. However, but for this condition under which the hearsay statement was made and received, same would be governed by the general rule of law, that no effect is to be given to hearsay statements not admissible under the rules of evidence, although the record does not disclose that any objection was made thereto. Paggi v. Rose Mfg. Co. (Tex. Civ. App.) 259 S. W. 962.

[3, 4] In passing upon the question presented by this appeal, to wit, whether the answers of the jury to the special issues submitted are contrary to the undisputed evidence we must discard all evidence favorable to plaintiff, and consider only that sustaining the verdict, for, if there is evidence to sustain same plaintiff must fail in his appeal. The well-accepted rule is that when the evidence is such that reasonable minds may fairly differ upon questions of fact the determination thereof is for the jury, and it is only where the facts are such that all reasonable minds must draw the same conclusion that it is a question of law for the court. Cartwright et al. v. Canoede, 106 Tex. 502, 171 S. W. 696.

[5] We have carefully reviewed the statement of facts for the purpose of ascertaining whether or not there is disclosed sufficient evidence to sustain the findings of the jury, and find, on the issue as to whether or not plaintiff was injured at the time, place, and in the manner alleged, the following is all of the evidence in support of the verdict:

Roy H. Terry testified that on the day the accident is alleged to have occurred he went to see plaintiff at his place of business and had the following conversation with him:

"I said, 'I thought you were just joking about being hurt over there in the restaurant;' and he said, 'I am the man, but I wasn't hurt; I was just scared.' And I said, 'Did you go to the Emergency?' and he said, 'Yes;' and I said, 'What did they say?' and he said, 'Oh, they said it was a little bruise and told me to go on;' and he said, 'I came on down here.' We talked for a while; I felt of his leg and looked at his pants, and I could not find any scratch on his pants. After this I didn't see him every day, but I would see him two or three or four times a week; I never saw him with any stick that I remember of, or anything like that. I never saw him limping around there in the neighborhood after the accident, and I saw him quite frequently after that time."

J. R. Bullock testified as to the falling of the cement, brick, and débris, as follows:

"I remember the occasion of a piece of cement or something falling off of the defendants' building on Harwood street in the early part of this year. I was in my shop at that time, heard the racket, and that's what attracted my attention. I looked out and saw some people gathered around, and saw an automobile that

had been struck by the débris. The back end of it was smashed in right smart. I did not see any one on the ground or that was hurt, or hear that any one got hurt. On that occasion I did not see plaintiff at all. I have never seen him limp or walking on crutches or with a stick. I got out there something like a minute after I heard the noise. I finished waiting on a customer before I went to the door to see what it was. I did not see plaintiff at all that day."

John Rosseau testified as follows:

"I remember the occasion of some débris falling off of the building owned by defendants on south Harwood street; I was inside the door of the building, and my attention was attracted to it by the noise when it struck the chains and slipped on down, and I went out immediately. I did not see anybody on the ground or lying there unconscious. I did not hear that anybody had been hurt. I did not know the plaintiff."

Not as being in opposition to the above testimony is the following evidence referred to, but for the purpose of showing that in fact no conflict exists between that and the undisputed facts, most of which are physical, and that the jury, in arriving at the answers to special issues did so contrary to such evidence, in fact in utter disregard thereof, to wit. By the positive testimony of the plaintiff, Ben Small, W. B. Carter, and Aaron Margules it is established that plaintiff was injured at the time, place, and in the manner alleged in his petition; that the character and extent of his injuries were established by the following medical expert testimony:

Dr. R. W. Jenkins testified:

"I was connected with the emergency hospital in February, 1923; during that time plaintiff was brought to the emergency for treatment; two other gentlemen were with him; they helped him in. I looked at his injury and found a bruised place on the outer side of his left thigh. I didn't think the skin had been cut; it had been bruised, what we call an abrasion; the skin was kinder torn off but not cut; the injury was caused from a bruise of some kind. I gave him 'first aid' attention; that was as far as I was supposed to go. As to how bad that bruise would turn out to be I could not tell at that time; I told him that it was a muscular bruise. I could not tell at that time that there had been a blood vessel ruptured, because that would follow later. I don't think he was able to walk without assistance. He came back once and talked the matter over with me, and I advised him to call in his private doctor."

Dr. E. V. Brannin testified:

"I saw the plaintiff a few days after the accident occurred, at his home; I made a physical examination of his injuries; he had a rather extensive bruise of the left thigh and in the upper portion of this bruise there had broken one of the large blood vessels in the thigh and had caused a blood clot, which had formed in the deep tissues and under the skin of his left thigh. At the time of the examination he seemed to be suffering pain, and I think that he was really suffering pain. The next time I saw him was at my office about 8 or 10 days after this visit to his home; at that time there was still a persistence of some of the swelling and some of the blood that had been poured out under his skin in the muscles and in the deeper tissues had gravitated throughout his leg and around the foot and ankle, and there was a discoloration of almost the entire leg. I mean a bluish black appearance from the blood that had leaked out under the skin. The injury had been sufficient to actually tear into or burst into one of the blood vessels sufficiently large for it to be underneath the skin and form an actual blood clot. It was what you would call 'internal bleeding.' The muscles of the leg must have been bruised; the discoloration of the leg started at the point of the injury and extended down below the point of the injury to the foot. It would be a hard thing to say how long this injury to his leg will last; that is a very uncertain thing. I really don't know how long before it will disappear, because these things are inclined to clear up very slowly. A few months more I think will be the end of the whole thing."

On the question of negligence, Roy H. Terry testified to the following facts: That the building in controversy had been built for 22 years; that the flues needed backing up; that some of the bricks were loose; that he wanted the fire walls plastered and loose brick taken off to make the building safe; that an ordinary building needed that amount of repairs every 10 or 12 years; that on these buildings, referring to the building in question and another adjoining, owned by defendants in error, new roofs had been put on two of them in the spring along in February, 1923; that in getting up on the buildings he discovered the loose brick in the flues, and that the mortar and plaster on the brick walls had become washed out, and that the bricks were loose; that the particular thing that fell off the building was brick and stuff that had become old and cracked; that he saw the débris soon after it fell; that the original wires which held it onto the brick wall had become rusted and broken, and that it was the kind of thing that often falls off buildings, they just deteriorate and crack and fall off; that he did not know whether there was immediate danger of that piece of concrete falling off at that time or not; that the flues were loose and the bricks were loose, and he thought it was the proper thing to get the wall plastered and fixed; that as soon as he learned the condition of the things on the roof of the building he undertook to have the necessary repair work done; that he reached the building soon after the débris fell, and found a lot of loose brick and mortar and trash and little pieces of concrete; that he had had a good deal of experience in the repair of buildings; that it was the business of defendants to repair buildings, build buildings,

and handle real estate; that he, with his three brothers and three sisters, owned the particular building involved in this suit; that he looked after the rental and repair of that building, and was attending to that particular building at the time of the alleged accident; that if the accident occurred on the 20th day of February, 1923, it was then about two weeks before that when defendants in error had repaired the roof on the building involved in this suit; that he was up on the buildings two or three times while the roofs of same were being repaired, and saw that the fire walls needed repairing, and undertook to have same repaired; that he saw the stuff that fell off the building; that in the years it had been cracked and unsafe and the wires that went into the brick and held it on had become rusted and broken; that he did not see that when he was up there, but did see that the flues were loose, and the plaster was cracked, open, and the building had become old just like the roof had worn out; they were dangerous, the flues were dangerous and the walls were dangerous, and they had become so from age.

It was established that the falling of the material from the building was due to its inherent weakness, caused by deterioration through age.

As to what really actuated the jury in bringing in the verdict rendered, we must forever remain strangers on the border line of conjecture, except to the extent of the impression that may be gleaned from the surrounding facts and circumstances as revealed by all of the evidence accessible to that body in their deliberation.

We cannot say, in giving effect only to the facts and circumstances which tend to sustain the verdict, that the jury, in an earnest and impartial effort to ascertain the truth, could have arrived at such conclusion. This view we have reached without reference to the evidence sustaining the issues involved in favor of plaintiff. The observance of this rule, however, will not prevent the consideration of and giving effect to the uncontradicted evidence sustaining the issues in favor of the plaintiff, it clearly appearing that there is no conflict in the evidence on which the jury must have based the verdict rendered, and the uncontradicted evidence establishing all of the material issues upon which the right of plaintiff to recover was made to depend, to wit, that the plaintiff was injured at the time and place as alleged, that the accident resulting in his injury occurred through the negligence of the defendants, as alleged, and the extent of the injuries sustained thereby.

When Roy H. Terry had the conversation with plaintiff, as testified to by Terry, the extent of the injury sustained by plaintiff had not developed. Therefore, conceding that plaintiff made the statements as testified to by Terry, which is strenuously denied by plaintiff, and that same were accepted by the jury as being true at the time made, yet it is not contended that the evidence, so accepted and relied on by the jury in arriving at its verdict, is in conflict with or in the least controverted the facts testified to by the witnesses Brannin, Jenkins, Small, Carter, and plaintiff in error. The testimony on all other issues is uncontroverted by the evidence upon which the verdict is founded.

While it is the province of a jury to pass upon all controverted facts in issue between litigants which prerogative courts will, with great care, preserve and protect, yet, with just as much precision and care will courts prevent wrongs from being inflicted upon litigants through the rendition of a verdict contrary to undisputed evidence which should determine the issues upon which the rights of litigants are made to depend. Especially so when the evidence before the jury is not such that reasonable men may fairly differ upon the questions of fact established thereby.

We are not called upon to say that, in rendering the verdict, the jury was actuated by prejudice, passion, and other motives and reasons than the evidence, it being sufficient for us to be able with reasonable certainty to say that the uncontroverted evidence on the material issues was evidently overlooked by the jury in its deliberation, and which, if left undisturbed, would in all probability result in a miscarriage of justice, to prevent which is one of the chief purposes for the existence of advisory courts.

For the reasons given, it is our opinion that the trial court erred in overruling the motion of plaintiff to set aside the findings of the jury and grant him a new trial, and that therefore the judgment should be reversed and the cause remanded, and it is so ordered.

Reversed and remanded.