### CONYER et al. v. BURCKHALTER et al. (No. 9537.)

(Court of Civil Appeals of Texas. Dallas. May 9, 1925. Rehearing Denied June 20, 1925.)

1. **Habeas corpus** ☞113(10) — **Appeal in habeas corpus proceedings not dismissed as moot because child removed from jurisdiction of courts of state.**

In habeas corpus proceedings to determine custody of child, involving questions of parentage and inheritance, the case did not become moot, requiring the dismissal of the appeal from a judgment of the trial court, because the child was no longer present within the jurisdiction of the courts of the state at the time of the appeal.

2. **Habeas corpus** ☞113(1)—**Appeal may be prosecuted from judgment in habeas corpus proceedings as in civil actions.**

Appeal may be prosecuted from a judgment of the court in habeas corpus proceedings to determine custody of child under same rules and regulations under which appeals are prosecuted in civil cases.

3. **Habeas corpus** ☞51—**Intervener in habeas corpus proceedings, asserting claim to child in question, waived right to interpose plea of privilege.**

Where intervener in habeas corpus proceedings, instituted to recover the custody of child, asserted his own right to the custody of the child, he thereby became a party to the proceeding, submitted to the jurisdiction of the court,

---

☞For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

and waived his right to question its jurisdiction by a plea of privilege.

**4. Habeas corpus ⬤⟿54—Petition for habeas corpus for custody of child should allege complete facts as to time and place of child's birth.**

A petition for habeas corpus for the custody of a child, alleging that applicants are parents of the child, should have alleged place and time of child's birth, name of city, as well as name of hospital, where intervener, asserting his own parentage of the child, interposed special exception for absence of such allegations.

**5. Habeas corpus ⬤⟿53—Rules of pleading and practice, applicable in civil cases, apply with equal force to habeas corpus proceedings to determine custody of child.**

Rules of pleading and practice, applicable to civil actions, generally apply with equal force and effect to proceedings in the form of habeas corpus, to determine the right to the custody of a child, especially where the parentage of the child is involved.

**6. Jury ⬤⟿19(19)—Error to refuse jury trial in habeas corpus proceeding for custody of child.**

A habeas corpus proceeding to determine the custody of a child is in all respects a civil case to be governed by the rules of procedure applicable to any other civil action, including right of trial by jury, and it was error for the court to refuse intervener claiming custody of child as parent right to a jury trial.

**7. Evidence ⬤⟿309—Letters to prove pedigree of child erroneously admitted, where not shown writer was dead, and member of family, and signature not proved.**

Letters and declarations of writer were inadmissible to prove pedigree of child, when it was not shown that writer was dead, or a member of the family of either one of parties claiming to be child's parents, and no proof of the genuineness of the signature to letter was adduced.

**8. Habeas corpus ⬤⟿113(9)—Witnesses ⬤⟿227—Error for judge to read result of personal examination of child into record, without being sworn or examined as witness.**

In a habeas corpus proceeding, where parentage of child was in question, it was error for the judge to read into the record the result of his personal examination of birthmarks on the child, without being sworn or examined as a witness, for, in assuming rôle of a witness, judge must do so in accordance with rules of procedure as to other witnesses.

**9. Witnesses ⬤⟿219(3) — Attorney, testifying for clients, waived immunity from testifying as to communication between self and client as to interest in subject-matter of litigation.**

Where attorney of party, bringing habeas corpus for custody of child, voluntarily testified, on behalf of his client, to material facts, he waived immunity from testifying in reference to communications between himself and client as to extent of interest in subject-matter of litigation, and could be cross-examined as to his interest.

Appeal from District Court, Dallas County; Royall R. Watkins, Judge.

Habeas corpus by Minnie Burckhalter and another against Sister Dominica, Sister Superior of the Sisters of St. Mary, for the custody of a child, in which L. A. Conyer intervened. From a judgment in favor of plaintiffs, the intervener and others appeal. Reversed and remanded.

John White and H. J. Yarborough, both of Dallas, for appellants.

Anthony P. Nugent, of Kansas City, Mo., and Burgress, Owsley, Storey & Stewart, of Dallas, for appellees.

VAUGHAN, J. On the 26th day of January, 1925, appellee Minnie Burckhalter, joined pro forma by her husband, Morris Burckhalter, of Des Moines, Iowa, applied for and obtained the issuance of a writ of habeas corpus from the court below, directing Sister Dominica, Sister Superior of the Sisters of St. Mary, an eleemosynary institution located in Dallas, Dallas county, Tex., to turn over to appellee Minnie Burckhalter the person of Louise Burckhalter, a baby girl five years of age, sometimes known as Dorothy Ada Conyer, or Dorothy Ada Kessler, or Dorothy Ada Kinnear, it being alleged in the petition for the writ of habeas corpus that appellee Minnie Burckhalter is the mother and entitled to the physical possession of said child; that Sister Dominica, Sister Superior of the Sisters of St. Mary, is now illegally and unlawfully in the physical possession of and holding said child in her keeping.

The writ as prayed for was duly granted and issued on the 26th day of January, 1925, directed to Sister Dominica, Sister Superior of the Sisters of St. Mary, commanding her to deliver to the sheriff of Dallas county the child in question, to be brought before said court at 2 p. m. Monday, January 26, 1925, for further orders. In obedience to the service of said writ, the child, as therein directed, was produced before the trial court. On the 28th day of January, 1925, the court below entered an order, whereby said child was taken into the custody of the court pending a determination of this cause, and, for safekeeping, placed her in the care and custody of the defendant Sister Dominica, Superioress of the school conducted by the Sisters of St. Mary at Ninth and Marsalis streets in the city of Dallas, and enjoined all the parties to the suit, except said Sister Dominica, their attorneys, and agents, from going about the premises of said school interfering in any way with the control and custody of said child, directly or indirectly, and from taking or attempting to take the custody of said child from said Sister Dominica or said school, "pending the hearing herein and until the further orders of this court."

Appellant L. A. Conyer, on the 30th day of January, 1925, in due order of pleading, filed

a plea of privilege for himself and as next friend of said child, and his plea of intervention. In said plea of privilege it is alleged that the trial court is without jurisdiction to hear, try, or determine this cause or any issue involved therein, for the reason that none of the real parties in interest have a legal residence in Dallas county, Tex.; that the applicant Minnie Burckhalter and her husband are residents of the state of Iowa; that the child, Dorothy Ada Conyer, has a domicile in San Antonio, Bexar county, Tex.; that appellant L. A. Conyer is a resident and citizen of San Antonio, Bexar county, Tex.; that said appellant has been in legal possession of said child, Dorothy, for a period of several years and up to the time she was delivered into the custody of the sheriff of Dallas county by the order of the trial court; that he is the father of said Dorothy, and that by law his domicile is the domicile of said child, and that appellant and said child are citizens of Bexar county, Tex., and therefore the legal residence of said Dorothy Ada Conyer is in Bexar county, Tex.; that they were legal residents of Bexar county, Tex., at the time said action was filed and long prior thereto, and are, at the present time, residents of said county of Bexar; that said action should have been brought in Bexar county, Tex.; that this action was fraudulently brought by appellee Minnie Burckhalter against Sister Dominica, Sister Superior of the Sisters of St. Mary, in order to confer jurisdiction upon the district court of Dallas county; that said child was in appellant's possession at the time said action was brought, in that he had only temporarily placed her under the care of Sister Dominica, Sister Superior of the Sisters of St. Mary, for the purpose of instruction, and that said Sister Dominica was agent for appellant and acting for him herein, and did not and does not purport to hold the custody of said child in her own right; that Sister Dominica is not a proper party at interest in this action or a proper party thereto; that the parties who have an adverse interest in said action to those of appellees Minnie Burckhalter and her husband, Morris Burckhalter, are appellant L. A. Conyer and the child, Dorothy Ada Conyer.

To the above plea of privilege, Minnie Burckhalter, on the 30th day of January, 1925, filed her affidavit controverting same, on the following grounds: (a) That she is the mother of the child, Louise Burckhalter, sometimes known as Dorothy Ada Conyer; that said child was found in the possession of said Sister Dominica, Sister Superior of the Sisters of St. Mary; that she was in such possession without the consent or knowledge of said appellee. (b) That this is an action for a writ of habeas corpus for the possession of said child as against Sister Dominica and the proper court having jurisdiction is the district court of the county in which said child was domiciled, to wit, Dallas county, at the time of the filing of the application for said writ. (c) Because this is an application for a writ of habeas corpus as against Sister Dominica for the custody of said child, and appellant Conyer, the party making said plea of privilege, is not a party to the proceeding, and is not entitled to plead or to be heard therein.

Appellant Conyer, in his plea of intervention, in addition to presenting a general and several special exceptions pleading to the merits, alleges: That appellee Minnie Burckhalter is not the mother of said child or otherwise related to her, and is only seeking possession of said child for the sole purpose of gaining possession of, to wit, $25,000 in property, money, and chattels devised and bequeathed to said child by said appellant's wife, Pauline Conyer, who died on the 27th day of October, 1922; that said appellee did not have in mind the interest of said child when this suit was brought, but that same was brought for the sole purpose and intent to mislead the court, and, through fraudulent means, gain possession of said child, and thereby deprive appellant, the father of said child, of the enjoyment of the relation of father and daughter, as well as caring for the property rights of said child; that said child was born in lawful wedlock and that his wife, Pauline Conyer, deceased, gave birth to said child in St. Louis, Mo., about five years prior to the filing of said suit; that, from the birth of said child, appellant and his deceased wife, up to the time of her death, and appellant, from the death of his said wife, looked after, cared for, nurtured, maintained, and raised said child; that, if said appellee Minnie Burckhalter is given possession of said child, she will thereby acquire control over the money and property willed to said child by her mother; and that said appellee will dissipate said estate for her own selfish interests without due consideration to the welfare of said child.

Appellee Minnie Burckhalter and husband, Morris Burckhalter, by supplemental petition, answered appellant's plea of intervention by a general denial, and by the following specific allegations: That on the 9th day of July, A. D. 1919, appellees Minnie Burckhalter and Morris Burckhalter were legally married, and since said date have continued as husband and wife; that on or about the 25th day of September, A. D. 1919, there was born in lawful wedlock to said appellees a child, the said Minnie Burckhalter giving birth to the child in controversy herein, Louise Burckhalter; that said child was taken from her custody and control without the knowledge or consent of either of said appellees, and is unlawfully in the possession of said Sister Dominica, or the said L. A. Conyer, neither of whom has any lawful right to the custody of said child.

Trial of the cause had on the 30th day of

January, 1925, without the intervention of a jury, resulted in a judgment in favor of appellees, the Burckhalters, for the possession of said child and perpetuating the temporary writ of injunction theretofore granted. From this judgment, appellants duly perfected their appeal, and the proceedings had are now before this court on proper record for review and revision.

Motion to dismiss this appeal filed by appellees, the Burckhalters, was, by agreement, presented with the submission of the case. The grounds of this motion are: (a) That the subject-matter of this suit, to wit, a child, Dorothy Ada Conyer, is now beyond the jurisdiction of this court, therefore the question before this court at this time is moot; (b) that an appeal does not lie from the granting of a writ of habeas corpus when the custody of a child is involved.

The pleadings upon which this cause was tried present issues other than the question of possession of the child, namely, the parentage of the child, i. e., the identity of her parents, and last and that which should be least in importance, the question of inheritance, which is, of necessity, involved in and must be settled in the determination of the issue of parentage, which, in fact, is of more importance to the child than to her parents, for every child has the right to know the source of its origin.

[1] These issues remain to be disposed of in a due and orderly legal manner, notwithstanding the child is beyond the jurisdiction of this court, as said issues do not rest upon the question of possession, or of the presence of the child within the jurisdiction of this court. The jurisdiction of the trial court having been properly invoked by all parties for the determination of all issues presented, the fact that the child is now beyond the jurisdiction of the courts of this state will not render ineffectual the judgment that may be rendered by this court, or by the trial court, on this cause being reversed and remanded for further proceedings in that court, for said issues form as much the subject-matter of this controversy as the possession of the child, and rest upon existing facts or rights, the determination of which will not, of necessity, leave the status of the parties as same was prior to such adjudication. However, the possession of the child was only incident to the real question presented to the trial court for determination, namely, the parentage of the child in question, which necessarily involves, as incident thereto, the question of inheritance. Therefore we hold that this has not become a moot case. Lawrence v. Nelson, 113 Iowa, 277, 85 N. W. 84, 57 L. R. A. 583; Whitesides v. Wood (Tex. Civ. App.) 210 S. W. 333; Adams v. R. Co., 21 R. I. 134, 42 A. 515, 44 L. R. A. 273; Oden v. Cain (Tex. Civ. App.) 218 S. W. 1079; 27 Cyc. 911.

[2] The right to prosecute an appeal in cases of this character under the same rules and regulations under which appeals are prosecuted in civil cases generally is no longer an open question. Legate v. Legate, 87 Tex. 248, 28 S. W. 281; Finney v. Walker (Tex. Civ. App.) 144 S. W 679. Said motion to dismiss is therefore overruled.

Appellant Conyer complains of the action of the trial court in overruling his plea of privilege to be sued in Bexar county. If appellant Conyer is in position to claim the benefit of the venue statute in this proceeding, then the trial court erred in overruling the plea without hearing evidence in support of and sustaining appellees' controverting affidavit, as under the law it was the duty of the court in the absence of such proof to have sustained the plea and ordered the cause transferred to the proper court of Bexar county.

[3] Is appellant Conyer in position to present and claim the benefit of the venue statute in this cause? This action, as originally brought, was in the form of a habeas corpus proceeding to recover the custody and possession of a minor child alleged to be the child of appellees, the Burckhalters. In the application for the writ, it is alleged that the child was unlawfully and illegally restrained of her liberty by said Sister Dominica; that appellee Minnie Burckhalter is the mother of said child, and is entitled to her physical possession, the appellees, the Burckhalters, and Sister Dominica being the only parties to the proceeding which involved, as between them, the right of appellees to the possession of the child Dorothy. In this state of the pleadings appellant L. A. Conyer intervened, as set out in the statement of the pleadings. Therefore he occupied the position of an intervener, with the right, not only to oppose the claim asserted by appellees, the Burckhalters, but to assume the position of a plaintiff for the purpose of asserting his right to the care, custody, and possession of the child as her parent on allegations contrary to and independent of the allegations made by said appellees. Said appellant, in thus becoming a party to the proceedings, submitted to the jurisdiction of the court, waiving his right to question same by plea of privilege, and accepted the case as he found it in so far as he was not at liberty to delay the disposition of the case, especially through dilatory proceedings, as the right to intervene is recognized and accorded for the purpose of enabling a party interested in the subject-matter of a suit and whose rights may be affected by such proceedings, to protect his rights in such proceedings. Appellees, the Burckhalters, base their claim of right to the possession of the child, Dorothy, on the allegation that they are her parents. Appellant Conyer intervened, denying that they are such parents, alleging that she was born to him and his deceased wife, and that he is the surviving parent of said child. This presents the issue of the parentage of the

child, the identity of her parents, and, incidentally, all the rights flowing from the relationship of parent and child. We therefore hold that said plea of privilege was not available to appellant under the venue statute, and the trial court did not err in overruling same without having proof in support of the controverting affidavit. Rainbolt et al. v. March et al., 52 Tex. 246; Legg v. McNeill, 2 Tex. 428, at page 430; Ragland v. Wisrock, 61 Tex. 391.

[4] Special exception No. 3 presented by appellant to appellees' petition for the writ, on the ground that it is not alleged when and where appellee Minnie Burckhalter gave birth to said child, giving the date, name of the city, as well as the hospital, if any, should have been sustained. It was incumbent upon appellees, the Burckhalters, to plead the facts omitted as indicated by said special exception, same being facts essential to their right to the custody of the child Dorothy, for, although appellant Conyer was not made a party in the application for the writ, yet, having become a party, had the right, by appropriate exceptions to the petition, to be advised of the facts that would be put in issue by said appellees in support of the claim for the possession of the child based upon the allegation that Minnie Burckhalter was the mother of said child.

[5] The rules of pleading and practice applicable to civil actions generally should apply with equal force and effect to proceedings in the form of habeas corpus to determine the right to the custody of a child, and especially so where, as in the instant case, the parentage of the child is involved, namely, the identity of its natural parents. Vickers v. Faubion (Tex. Civ. App.) 224 S. W. 803.

On the merits of the case, the following are the material facts testified to: Appellees, the Burckhalters, are husband and wife: were married July 9, 1919. At the time of their marriage, they resided at Pocohontas, Iowa, and now reside at Des Moines, Iowa. A child was born to them September 25, 1919, at the Bethesda Home, St. Louis, Mo.; appellee Minnie Burckhalter at that time and place giving birth to a baby girl within 24 hours after entering said Home. Said appellee saw her baby immediately after birth, but never saw her again until she was brought to her to take breast nourishment on the fourth day after birth. That was the first and only time they ever brought the baby to her. She was not able to nurse the baby and never tried again. On the fifth day after the birth of her baby, said appellee was informed by one of the nurses that her baby had died. This information was verified on the same day by Mrs. J. Elsie Schroeder, superintendent of said Home. Appellee's husband left the Home about 2 hours before the baby was born and did not return until the 14th day thereafter. At this time appellees, the Burckhalters, left for their home. Appellee Minnie Burckhalter did not see her baby after being told she was dead. She did not ask that any proof of death be made, nor what was the cause of the baby's death, and was not informed in reference thereto. She did not give any instructions with reference to the burial of the child; did not ask and was not advised as to the place of burial. Said appellee on returning home did not tell her father and mother, brothers and sisters, nor either one of them, that she had given birth to a baby in St. Louis or anywhere else. She did not say anything to the authorities of the Bethesda Home when she was informed of the death of her baby. Appellee Morris Burckhalter paid the Bethesda Home for the burial expenses of the baby. About being able to identify the baby in question as being the baby that she gave birth to, appellee Minnie Burckhalter testified as follows:

"Nothing else happened in connection with the baby so far as I know until Mrs. J. Elsie Schroeder, the superintendent, wrote me, wanting to know about the baby. That was August 22, 1923. From the fourth day after the birth of the baby until I received that letter, my husband and I honestly believed that the baby was dead. I have seen the child in the city of Dallas. I saw it here last Sunday morning for the first time, in the possession of Sister Dominica. There were marks on the body of the baby at the time of its birth which would permit me to identify it. There is a little mark at the base of the hair. Sometimes they are noticeable, and sometimes they are not; heat and cold, they change. Sunday I could see them plainly. Those marks they look like little indentations by a fork; they are red, and sometimes they are blue, and sometimes they are kind of red. I observed the child; I noticed those marks at the place I have described. I have other children born of the marriage of myself and Mr. Burckhalter and those children have marks upon their bodies. Two have marks upon their bodies the same as marks on Dorothy. Those same marks are on other members of my family. Those marks are red at the base of the skull. I can't say whether on one side or the other or exactly in the center. Sometimes they get red, and sometimes blue. They are not regular; they look different at different times. They are very small, about the size of a pin head. I had the child in my arms once (referring to the time when the child was brought to her to nurse). I had it for about half an hour or more. I didn't pay much attention to the way it was dressed. It was in a little night gown and wrapped in a little blanket."

Appellant L. A. Conyer was married to his deceased wife, Pauline Conyer, in St. Louis, Mo., March 31, 1917. Pauline Conyer died October 27, 1922, at a hospital in Hot Springs, Ark. On the issue as to whether or not a child was born to appellant Conyer and his deceased wife, and whether or not the child in controversy is that child, said appellant testified as follows:

"During our married life we had one child born to us, a girl, who was born October 8, 1919, in St. Louis, Mo. At that time I was

living at Tulsa, Okl. That was the only child that was born to us. That child is now out here at St. Mary's Academy. I have seen her here in the courtroom. That is the child the sheriff had in here. That's my baby. That is the child my wife gave birth to. At the time my wife gave birth to the child in St. Louis, I was in Tulsa, Okl., working. I did not go up there with my wife. I noticed my wife's condition before she left for St. Louis, on the fourth day before the child was born. She left on Sunday, October 5th, and the child was born the 8th. My wife was pregnant at the time she left my home. About 4 weeks or something like that before the child was born, my wife purchased an outfit of baby clothes. I know that was ordered because I paid for it. It came and we looked it over. When she left for St. Louis, she took that outfit with her. She reached St. Louis Monday morning and said she went to the Baptist Hospital to be there when she was going to be confined. Then she went down Franklin street, two or three blocks, or something like that, from the Baptist Hospital, and got a room there. On Wednesday morning at noontime the pain struck her so severely she didn't have time to get to the hospital and the baby was born in the rooming house where she had the room. The landlady went out and got the doctor and brought him in to wait upon her. The baby was born on Wednesday, October 8th, and she returned home with the baby October 19th. The baby that she brought home with her at that time is the baby that I have out there at St. Mary's Academy now. We have had that baby in our possession since that time. I have not had her in my possession all of the time, but have contributed to her support. Me and my wife were separated 1½ years, but I contributed to my wife's support all the time. During that time my wife had possession of the baby. During 1922 a divorce suit was pending between me and my wife; she instituted the suit and I filed a cross-suit asking for the custody of the child and also for a three-fourths interest in some oil and gas leases I assigned to her in trust. She kept putting it off until her doctors told her her demise was only a question of a short time, so she had Mrs. Conney L. Smith, of Eldorado, Ark., to adopt the baby and she willed what she had to the baby. Her estate consisted of some oil and gas leases, and it is hard to estimate the value of same. She turned over three diamonds to Mrs. Smith worth $5,000 or $6,000. As soon as I found out that my wife had died, I filed habeas corpus proceedings in chancery court in Pulaski county, Little Rock, and I was awarded the baby on the 7th day of December, 1922. I know that my wife gave birth to that child that was in here to-day, which is the child in controversy. I know that, because my wife was pregnant when she left for St. Louis. My wife was a woman that was very stout and consequently it didn't show up like it would on a smaller woman, but you could feel life in there, and also her privates were swollen and she was swayed in the back. I felt the life myself; I know it was there. Something was there and that is what she came back with. When she came back, she looked as though she had been pretty sick, and she wasn't as heavy apparently as she was when she went away. I understand that my wife died from cancer of the stomach. The divorce suit was never dismissed; it just went out when she died. During the 5 years this child has lived, I have had her in my possession about 3½ years. She was better than 1½ years when me and my wife separated in 1921, and I got her back in December, 1922, and since that time I have had her all of the time except for 5 or 6 months she was in Arkansas and the short time she was with Mrs. Kessler and in charge of Sister Dominica of the Sisters of St. Mary."

As to the value of the estate willed to the baby appellant testified:

"Mrs. Smith is supposed to have $21,000 in money besides those diamonds."

The will executed by Pauline Conyer is of date August 17, 1922, and by its terms all of the property of the testatrix is bequeathed, after providing for the payment of her debts, as follows:

"All the rest and residue of my estate, whether real, personal or mixed, of whatsoever description and wheresoever situated, I give, devise and bequeath to my beloved daughter Dorothy Ada Conyer, and unto her heirs and assigns forever."

[6] Appellant L. A. Conyer complains of the action of the trial court in refusing his request for a trial by jury. That appellant made proper and timely request that the cause be placed on the jury docket with tender of the requisite fee is not questioned, but the action of the court in denying the request thus made is based upon the proposition that, under the law, a jury trial is not accorded in a proceeding of this character. In passing upon this question, the trial judge evidently was governed by the rule applicable to habeas corpus proceedings as applied purely to the criminal law, namely, to proceedings where it appears that the person in whose behalf the writ is sought is alleged to be unlawfully restrained of his liberty by reason of his supposed violation of some criminal law or quasi-criminal law; it being contrary to the policy of the law in such cases to grant a trial by jury. The trial court was in error in applying this rule. It is not the form of the remedy resorted to, namely, habeas corpus, that determines whether the action is civil or criminal, but it is the cause of the restraint alleged that classifies the action. The cause of restraint alleged in the petition for the writ clearly excludes the existence of any fact in connection with the restraint of the child that would tend to class same as a criminal case. Therefore the proceeding must not only be classed as, but is, in every respect, a civil case, to be governed by the rules of procedure applicable to any other civil action, and therefore to be tried and determined by the same rules of pleading and practice applicable to civil actions generally, which certainly includes the right of trial by jury. Legate v. Legate, supra; Vickers v. Faubion, supra; Long v. Smith (Tex. Civ. App.) 162

S. W. 25; Finney v. Walker, supra; 12 R. C. par. 75, p. 1257; Ex parte Reeves, 100 Tex. 617, 103 S. W. 478. We therefore hold that the refusal of appellant's request for a jury was material error.

[7] Over the objection of appellant Conyer, the court permitted appellees, the Burckhalters, to introduce and read in evidence three letters, of date, respectively, August 22, 1923, September 6, 1923, and September 1, 1923, purporting to have been written by one J. Elsie Schroeder to appellee Minnie Burckhalter, addressed to her as "Miss." The letters, we will assume, were admitted on the theory that same came within the rule of law admitting hearsay testimony to establish the pedigree of the child, Dorothy, as the contents of same related thereto. Were same admissible for this purpose? The declarant whose testimony is reproduced by the conveying witness in cases of this character, must be a member of the family of the person in reference to whom such declaration was made, and must be dead, of which facts due proof must be made, as a predicate for the introduction of the hearsay statement. The letters were offered without any proof showing or tending to show that J. Elsie Schroeder was dead and a member of the family of either one of the contending parties for the possession of the child, Dorothy, and without any proof that the signature of the person purporting to have signed said letters was genuine, viz., the signature of one J. Elsie Schroeder, which was necessary to have authorized the admission of said letters in evidence if otherwise admissible. In the manner the letters were received and admitted in evidence, same were not even of the dignity of hearsay evidence being only ex parte declarations of hearsay statements. No. Amer. Accident Co. v. Miller (Tex. Civ. App.) 193 S. W. 750.

These observations in reference to the admission of said letters in evidence apply with equal force to the admission of the hearsay statements in evidence as testified to by appellee Minnie Burckhalter in her own behalf and similar statements testified to by A. P. Nugent, one of the attorneys for appellees, testifying as a witness in their behalf, upon the issue as to the parentage of the child, Dorothy, for, if as presented, this issue can be established by hearsay evidence introduced in strict compliance with the rules governing the production of such testimony to establish pedigree in its most comprehensive sense, namely, descent, relationship, birth, marriage, and death, the statements as testified to by said witnesses had no probative force, as same were not admissible under the rules governing the production of hearsay evidence to determine any one of the issues before the court.

The statements testified to by A. P. Nugent, Esq., as having been made to him by Mrs. J. Elsie Schroeder and Mrs. Cooney L. Smith, as well as the statements testified to by appellee Minnie Burckhalter as having been made to her by Mrs. Cooney L. Smith, as to the birth, relationship, and identity, of the child in question, were not admissible for the purpose of establishing the pedigree of said child, this, perforce, of the fact that the testimony of said witnesses in reference to such statements was admitted without the predicate having been laid for the introduction in evidence of such hearsay statements; namely, that the said J. Elsie Schroeder and Mrs. Cooney L. Smith were members of the family of which the child, Dorothy, is a member, or that they were members of either one of the families of the parties claiming to be her parents, and that said declarants were dead. Summerhill v. Darrow, 94 Tex. 71, 57 S. W. 942; Louder et al. v. Schluter, 78 Tex. 103, 14 S. W. 205, 207; Byers Bros. v. Wallace, 87 Tex. 503, 28 S. W. 1056, 29 S. W. 760; Wolf v. Wilhelm et al. (Tex. Civ. App.) 146 S. W. 216; Greene v. Almand, 111 Ga. 735, 36 S. E. 957.

We therefore hold that the conclusion of facts as found by the trial court, based upon said. letters and the hearsay statements of said witnesses, as well as the judgment rendered thereon, is not authorized or supported thereby. Henry et al. v. Phillips, 105 Tex. 459, at page 466, 151 S. W. 533, 538. In that case the court, in passing upon a similar question, held:

"Such incompetent testimony can never form the basis of a finding of facts in an appellate court, notwithstanding its presence in the record without objection. When the appellate court comes to apply the law to testimony constituting the facts of the case, it can only base its conclusion upon such testimony as is under the law competent. That which is not competent testimony should be given no probative force. The admission of such testimony is no talisman to give effect to that which is irrelevant and incompetent to sustain or deny a material issue in a case." Paggi v. Rose Mfg. Co. (Tex. Civ. App.) 259 S. W. 962; Margules v. Terry, 273 S. W. 690, decided by this court April 25, 1925.

[8] Appellant Conyer, by appropriate proposition, complains of the act of the judge of the court trying the case in examining the child, Dorothy, in reference to the birthmarks testified to by appellee Minnie Burckhalter and thereafter reading into the record of the case the result of such examination, to the effect:

"Let the record show that the court called for the child to be brought to the courtroom and was informed by the defendant Sister Dominica that the child was ill, and that they had a doctor with her during the night, and that the court then, on its own motion and volition, visited the home where the child is and examined the back of its head and found some three or four small dark birthmarks as described by the plaintiff, two in the middle and one just below, as described in her petition."

That the judge of a court may testify in a cause being tried before him is not now an open question. However, in assuming the rôle of a witness, he must do so in accordance with the same rules of procedure that apply to any other witness; namely, to be sworn in the manner and form as required by law, unless such oath be waived by the parties, and be examined and re-examined by the parties to the suit touching his knowledge of the matters in reference to which he may testify. The bill of exception taken to this procedure affirmatively shows that the trial judge was not sworn and examined as a witness, and that he did act upon the information thus received by him and read into the record. A trial judge, hearing a case without the intervention of a jury, must receive evidence upon which the issues are to be determined by him through the regular medium of the trial. If the case had been tried to a jury, it would have been proper to have produced the child in court, and in the presence of the jury a witness could have examined her and testified as to the existence of any characteristic mark or marks, commonly referred to as birthmarks, that would distinguish the child from any other child, and in the course of such examination the jurors would have had the right to have made their own observation in reference to the birthmarks so testified to. Should a different rule of procedure apply where the case is tried by the court without a jury? We think not. Long v. Smith et al. (Tex Civ. App.) 162 S. W. 25; 22 C. J. p. 440, § 529.

[9] Appellant contends that the court erred in sustaining appellees' objection to the following questions propounded by appellant on cross-examination to A. P. Nugent, one of the attorneys for appellees, the Burckhalters, namely:

(a) "Are you to get your pay out of—the expenses you have spent—out of this money that has been willed to this little girl by Mrs. Pauline Conyer, deceased?"

(b) "Now isn't it a fact that you took this case on this agreement, that you would develop, you would furnish all the money and establish the identity of that child, for half of that property?"

The objection sustained, being that the matters sought to be introduced in evidence by said questions, were confidential communications between said attorney and his client, had in the course of his professional employment concerning the subject-matter of the litigation. The evidence that would have been introduced by the answers to the questions objected to would only have been material to show the interest of the witness in the subject-matter of the litigation, to be considered in determining the probative effect to be accorded the testimony of the witness. Evansich v. G., C. & S. F. R. Co., 61 Tex. 24. If not admissible for this purpose, the objection was properly sustained to the questions propounded. In passing upon this phase of the case, it is well to recall and bear in mind the reason for the existence of this rule and the results intended to be accomplished in the application of same, viz., to secure to a client and his attorney the privilege of refusing to testify to any communication had between, or transaction by, them in the course of such relationship concerning the subject-matter of the professional employment of the attorney, and designed to secure the utmost freedom of communication between client and attorney in the interest of proper representation of, and advice to, the client, and, as an incident thereto, the orderly and speedy dispatch of litigation, all of which should be the accomplishment of the rule honorably observed and justly invoked. Are there any limitations to the application of this rule? We think so, or at least there should be, in the interest of proper administration of justice, in that the benefits of the rule should not be available when to enforce same would be to withhold evidence of the interest of the attorney testifying as a witness in the subject-matter of the litigation, as the knowledge of such interest without exception is in all cases material in determining the credibility of witnesses and the weight to be given their testimony, which prerogative of the court or jury trying the case cannot be dispensed with merely to give effect to the rule, for upon this depends, to a great extent, the proper solution of all controverted issues of fact.

A. P. Nugent was of counsel in this cause, representing appellees, the Burckhalters. He voluntarily assumed the role of a witness in behalf of his clients, and, in the course of his examination, testified to material facts supporting his clients' side of the controversy. That he was subject to cross-examination in reference to the matters testified to by him, there can be no question; the contention being that the cross-examination objected to was not permissible, although for the purpose of showing his interest in the subject-matter of the suit, because said testimony would have deprived him of his immunity in that he would have been required to testify to a privileged communication between himself and his clients. To sustain this contention would be to provide a cloak to conceal the interest of one testifying as a witness in the subject-matter of the litigation because such witness happened to be an attorney representing one of the parties thereto and to prevent such interest from being considered in determining, not only the credibility of the witness, but the weight to be given his testimony. We therefore hold that the court erred in sustaining appellees' objection to said questions and in refusing to permit the witness to answer same, for said attorney, having voluntarily testified to

material facts in behalf of his clients, waived the privilege of claiming immunity from testifying in reference to any communication had between him and his clients to the extent of his interests in the subject-matter of the litigation; the evidence of such interest always being admissible to be considered in determining the credibility of the witness as well as the weight to be given to his testimony. Evansich v. G., C. & S. F. R. Co., supra.

Because of the several errors herein discussed, the judgment of the trial court should be reversed, and the cause remanded for further proceedings not inconsistent with this opinion, and it is so ordered.

Reversed and remanded.